OFFICE PLANNING GROUP, INC v BARAGA-HOUGHTON-KEWEENAW
CHILD DEVELOPMENT BOARD

Docket No. 245155. Submitted October 8, 2003, at Marquette. Decided
November 4, 2003, at 9:05 A.M. Leave to appeal sought.

Office Planning Group, Inc., brought an action in the Houghton Cir-
cuit Court against the Baraga-Houghton-Keweenaw Child Develop-
ment Board, a private, nonprofit organization that runs federal
Head Start programs, following the defendant's denial of the plain-
tiff's request for copies of all bids submitted to the defendant for
office supplies and furnishings. The plaintiff's bid had not been
accepted by the defendant, which accepted a bid lower than the
one submitted by the plaintiff. The court, Garfield W. Hood, J., held
that 42 USC 9839(a) required the defendant to provide copies of
the bids to the plaintiff, and granted an order of summary disposi-
tion consistent with that holding. The defendant appealed.

The Court of Appeals *held*:

1. An implied private cause of action exists for enforcement of
the provision in 42 USC 9839(a) that allows public access to the
books and records of Head Start agencies.

2. Although the statute creates a federal cause of action, the
Court of Appeals shares concurrent jurisdiction to decide this mat-
ter because the Head Start Act, 42 USC 9831 *et seq.*, does not pro-
vide for exclusive federal court jurisdiction.

3. The trial court did not err in concluding that the Head Start
Act required the defendant to reveal the bids to the plaintiff. The
act provides that a Head Start agency's books and records involving
the use of authority or funds for which the agency is responsible
are available for public access, not just access by appropriate com-
munity groups. The defendant's purchase involved the use of funds
for which it is responsible.

4. The statute provides for reasonable public access and does not
provide that the defendant may choose to whom it wishes to dis-
close information.

5. The plaintiff's reason for requesting the bids is irrelevant, the
act requires the defendant to provide reasonable public access to
its books and records involving the use of authority or funds for

which the agency is responsible when they are requested for any reason.

6. The defendant is a Head Start agency as defined in 45 USC 1301.2.

7. The interpretation of the relevant statutes by the federal Department of Health and Human Services that concluded that the defendant could comply with the statute simply by providing copies of the procurement procedures and that the defendant need not reveal specific information about the bids it received was not by the agency secretary or the upper echelon of the agency staff and is not binding on the Court of Appeals. In addition, the agency interpretation is clearly wrong and is not entitled to deference. The statute does not limit the disclosure requirement to the agency's procedures without allowing access to the documents that reveal how the agency put those procedures into effect.

Affirmed.

RECORDS — HEAD START AGENCIES — PUBLIC ACCESS.

The Head Start Act requires a Head Start agency, whether a public agency or a private nonprofit agency, to provide reasonable public access to its books and records involving the use of authority or funds for which the agency is responsible when such books and records are requested for any reason; an implied private cause of action in state court exists for the enforcement of the requirement of public access to such books and records (42 USC 9839[a]).

*Tercha & Daavettila* (by *Nicholas J. Daavettila*) for the plaintiff.

*Johnson, Rosati, Labarge, Aseltyne & Field, P.C.* (by *Marcia L. Howe*), for the defendant.

Before: METER, P.J., and SAAD and SCHUETTE, JJ.

SCHUETTE, J. Defendant Baraga-Houghton-Keweenaw Child Development Board appeals as of right an order granting in part and denying in part its motion for summary disposition under MCR 2.116(C)(10) and granting summary disposition to plaintiff Office Planning Group, Inc., under MCR 2.116(I)(2). We affirm.

I. FACTS

This case arose when defendant denied plaintiff access to bids it accepted for the purchase of office furniture. Defendant is a private, non-profit organization that runs federal Head Start programs in the three counties it serves. Plaintiff is a private, for-profit corporation. In January 2001, defendant solicited bids for various office supplies and furnishings. Plaintiff submitted a bid for office furniture and cubicles on the original January 15 deadline. Defendant changed the deadline to January 29 after other vendors requested an extension, and plaintiff submitted a new bid before the extended deadline.

On January 29, 2001, defendant's building committee opened the bids at a public meeting. Plaintiff's representative, John Hamm, testified at the hearing on the motion for summary disposition that defendant's executive director, Rodney Liimatainen, informed him of the meeting but did not invite him to attend. Liimatainen confirmed none of the vendors that submitted bids attended the meeting. After the board opened the bids, Liimatainen informed Hamm that plaintiff's bid exceeded the lowest bid by $10,000. Defendant's board accepted the lowest bid at its meeting on February 14, 2001.

In letters dated February 5 and February 23, 2001, plaintiff and its counsel filed requests with defendant pursuant to the Freedom of Information Act (FOIA)[1] for copies of all bids for office furniture submitted to defendant. According to Hamm, plaintiff sought to ensure the winning bid contained the same items as

---

[1] The parties agree plaintiff filed its request under Michigan's Freedom of Information Act, MCL 15.231 *et seq.*

plaintiff's bid. In a reply letter, defendant refused the request, stating it was a non-profit corporation and not subject to the FOIA.

Plaintiff filed the instant action and amended its complaint to include claims under the federal Freedom of Information Act, 5 USC 552, and "federal legislation which requires disclosure of information by parties supplying service under the so-called Head Start Program." Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), claiming no genuine issue existed with regard to any material fact and claiming defendant was not subject to the federal or state FOIA.

The trial court held an initial hearing on the motion and then requested the parties submit supplemental briefs addressing the application of 42 USC 9839, which sets administrative requirements for Head Start agencies. Among other things, the statute requires that agencies "provide for reasonable public access to information, including public hearings at the request of appropriate community groups and reasonable public access to books and records of the agency or other agencies engaged in program activities or operations involving the use of authority or funds for which it is responsible." 42 USC 9839(a). After receiving the supplemental briefs, the court scheduled an evidentiary hearing to clarify what it viewed as possible factual disputes. During this second hearing, the trial court ruled the federal and Michigan versions of the FOIA did not apply to defendant. Plaintiff's FOIA claims are not at issue in this appeal.

On November 7, 2001, the trial court issued its opinion and order, denying defendant's motion for summary disposition with regard to the Head Start

statute. The trial court concluded 42 USC 9839(a) required defendant to provide copies of the bids to plaintiff. The court held the purchase of office furniture required the use of funds for which defendant was responsible and the bids defendant accepted qualified as "books and records of the agency." Concerning what constituted reasonable access, the court noted certain types of access would not be reasonable, including a demand outside of working hours or a request that an agency create a record that does not exist. But the court concluded plaintiff's request was within reason:

> In the present situation, a denial by the Plaintiff [sic, the defendant] of a written request to review specified, existing and readily accessible written bids is certainly not compliant with a requirement of providing reasonable public access. That would be true regardless of who made the request, but the case is even more compelling when the requesting party has a genuine, identifiable reason for the information sought, as did the Plaintiff.
>
> In summary, Defendant's denial of Plaintiff's request to review and obtain copies of the bids in question was in violation of the Federal requirement that Plaintiff [sic, defendant] provide for reasonable public access to information, including reasonable public access to books and records of the agency, involving the use of funds for which the Plaintiff [sic, the defendant] is responsible.

The trial court granted plaintiff summary disposition pursuant to MCR 2.116(I)(2) and ordered defendant to provide "copies of all bids received by Defendant pursuant to its request for bids published in the *Daily Mining Gazette* and *L'Anse Sentinel* in accordance with Plaintiff's [sic, Defendant's] bid request dated January 4, 2001." The court also found defen-

dant could require plaintiff to pay reasonable copying costs.[2]

Defendant now appeals the trial court's grant of summary disposition to plaintiff. The trial court denied defendant's motion to stay the proceedings pending this appeal, but we granted defendant's motion to stay the proceedings and its motion for immediate consideration of this appeal.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). Additionally, statutory interpretation presents a question of law that we review de novo. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

## III. ANALYSIS

Defendant asserts the trial court erred in concluding 42 USC 9839(a) required defendant to disclose the bids plaintiff requested. We disagree.

The outcome of this case turns on the interpretation of a provision of the federal Head Start Act, 42 USC 9831 *et seq.* The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996). If the statute's plain and ordinary meaning is clear, judicial construction is neither necessary nor permitted. *Id.* How-

---

[2] In an extension of its earlier mix-up, the trial court stated *plaintiff* could require *defendant* to pay reasonable copying costs.

ever, if reasonable minds could differ regarding the statute's meaning, judicial construction is appropriate. *Rowell v Security Steel Processing Co*, 445 Mich 347, 351, 353; 518 NW2d 409 (1994).

Head Start programs "promote school readiness by enhancing the social and cognitive development of low-income children through the provision, to low-income children and their families, of health, educational, nutritional, social, and other services that are determined, based on family needs assessments, to be necessary." 42 USC 9831. According to regulations promulgated by the Department of Health and Human Services (HHS), a Head Start Agency is "a local public or *private non-profit* agency designated to operate a Head Start program by the responsible HHS official . . . ." 45 CFR 1301.2 (emphasis added). Defendant concedes it is subject to the Head Start Act because it contracts to provide services for HHS.

The Head Start Act requires agencies to follow certain administrative procedures, including the following:

(a) Employment practices, nonpartisanship, staff accountability, public access to information, etc. Each Head Start agency shall observe standards of organization, management, and administration which will assure, so far as reasonably possible, that all program activities are conducted in a manner consistent with the purposes of this subchapter [42 USC 9831 *et seq.*] and the objective of providing assistance effectively, efficiently, and free of any taint of partisan political bias or personal or family favoritism. Each such agency shall establish or adopt rules to carry out this section, which shall include rules to assure full staff accountability in matters governed by law, regulations, or agency policy. *Each agency shall also provide for reasonable public access to information, including public hearings at the request of appropriate community groups*

*and reasonable public access to books and records of the agency or other agencies engaged in program activities or operations involving the use of authority or funds for which it is responsible.* Each such agency shall adopt for itself and other agencies using funds or exercising authority for which it is responsible, rules designed to (1) establish specific standards governing salaries, salary increases, travel and per diem allowances, and other employee benefits; (2) assure that only persons capable of discharging their duties with competence and integrity are employed and that employees are promoted or advanced under impartial procedures calculated to improve agency performance and effectiveness; (3) guard against personal or financial conflicts of interest; and (4) define employee duties in an appropriate manner which will in any case preclude employees from participating, in connection with the performance of their duties, in any form of picketing, protest, or other direct action which is in violation of law. [42 USC 9839(a) (emphasis added).]

The parties dispute the meaning of the emphasized language and whether it requires defendant to grant plaintiff's request to view the bids for office furniture and cubicles.

Defendant first asserts 42 USC 9839(a) does not provide for a private cause of action. We disagree. Whether a statute provides a cause of action presents a question of statutory interpretation that we review de novo. *Pitsch v ESE Michigan, Inc*, 233 Mich App 578, 586; 593 NW2d 565 (1999), citing *Long v Chelsea Community Hosp*, 219 Mich App 578, 581-582; 557 NW2d 157 (1996).

This Court summarized the approach used to determine whether a private cause of action exists as follows:

If the common law provides no right to relief, and the right to such relief is instead provided by statute, then

plaintiffs have *no* private cause of action for enforcement of the right *unless*: (1) the statute expressly creates a private cause of action or (2) a cause of action can be inferred from the fact that the statute provides no adequate means of enforcement of its provisions. *Bell v League Life Ins Co*, 149 Mich App 481, 482-483; 387 NW2d 154 (1986). It follows that courts must dismiss a private cause of action under a statute creating a new right unless the statute expressly created the private cause of action or the cause of action may be inferred because the statute does not provide adequate means to enforce its provisions. *Forster v Delton School Dist*, 176 Mich App 582, 585; 440 NW2d 421 (1989). [*Long, supra* at 583.]

Michigan courts have not addressed whether a private cause of action arises under 42 USC 9839(a). Neither have other state or federal courts. But two federal district courts have addressed whether other provisions of the Head Start Act provide a private cause of action, and each concluded they did not.

In *Johnson v Quin Rivers Agency for Community Action, Inc*, 128 F Supp 2d 332, 336 (ED Va, 2001), the plaintiff asserted numerous claims of mismanagement of a Head Start program, in violation of federal regulations. The district court, using an approach similar to that described in *Long, supra* at 583, determined no private cause of action existed and dismissed the claims for failure to state a claim on which relief could be granted. *Johnson, supra* at 336. The court concluded:

Under the scheme [the Head Start Act], the Secretary of the Department of Health and Human Services is directed to "establish by regulation standards applicable to Head Start agencies, programs, and projects under this subchapter," including "minimum levels of overall accomplishment that a Head Start agency shall achieve." 42 U.S.C. § 9836a(a)(1) & (2). The Secretary is also directed under

this section to monitor the performance of every Head Start program and to take appropriate corrective action when a program fails to meet the performance standards established by the regulations. Specifically, the Act requires a full review of each grantee at least once during each three-year period, review of new grantees after the completion of the first year, follow up reviews and return visits to grantees that fail to meet the standards, and "other reviews as appropriate." 42 U.S.C. § 9836a(c). If the Secretary determines, on the basis of such a review, that a grantee fails to meet the standards described in § 9836a(a), the Secretary shall, *inter alia*, institute proceedings to terminate the Head Start grant unless the agency corrects the deficiency. 42 U.S.C. § 9836a(d).

All but three of the regulations cited in plaintiff's Second Amended Complaint were promulgated pursuant to the Head Start Act. See 45 C.F.R. § 1304.1. There is no provision in the Head Start Act, however, permitting a private citizen to enforce its provisions. Based on the alternative specific remedies mentioned above, Congress' intent is clear. The remedy for substandard performance by a Head Start program is an enforcement action by the Secretary of the Department of Health and Human Services, not by private litigants. [*Id.*]

Meanwhile, in *Hodder v Schoharie Co Child Dev Council, Inc*, 1995 US Dist LEXIS 19049, 1 (ND NY, 1995), former employees of a private, non-profit organization that operated Head Start programs sued the organization for firing them in violation of the Head Start Act and its interpretive regulations. The court applied a four-part test to determine whether Congress intended to provide a private cause of action: "1) whether plaintiffs belong to the class for whose special benefit Congress passed the statute; 2) whether the indicia of legislative intent reveal a congressional purpose to provide a private cause of action; 3) whether implying a private cause of action

is consistent with the underlying purposes of the legislative scheme; and 4) whether the plaintiff's cause of action concerns a subject that is traditionally relegated to state law." *Id.* at 10-11, citing *Merrell Dow Pharmaceuticals, Inc v Thompson,* 478 US 804, 810-811; 106 S Ct 3229; 92 L Ed 2d 650 (1986); *Cort v Ash,* 422 US 66, 78; 95 S Ct 2080; 45 L Ed 2d 26 (1975).

In light of these factors, the *Hodder* court decided no private cause of action existed. First, the court found the plaintiffs were "far-removed from the class for whose special benefit Congress enacted the Head Start Act," which benefits disadvantaged children and their families. *Hodder, supra* at 11. Second, the court found no indication Congress intended to create a private cause of action for employees terminated from Head Start agencies. *Id.* at 12. Third, the court concluded that inferring a private cause of action would do nothing to further the underlying purposes of the legislative scheme. *Id.* at 13-14. Finally, the court held actions for breach of an employment contract are traditionally relegated to state law. *Id.* at 16.

Returning to the case before us, neither 42 USC 9839(a) nor the Head Start Act generally creates an express private cause of action. However, we conclude the statute implies a private cause of action. In Michigan, a private cause of action may be inferred if a statute provides no adequate means of enforcing its provisions. *Long, supra* at 583. The statute in question, 42 USC 9839(a), requires Head Start agencies to provide reasonable public access to their books and records, but it does not provide any means of enforcing this specific provision. Although the Head Start Act requires agencies to open their books and records to the department secretary or the United States Comptroller General for audit and examination, 42

USC 9842, Congress specifically provided for *public* access to the books and records, not simply to the audits prepared by these other entities. Therefore, we conclude an implied private cause of action exists. Further, while the statute creates a federal cause of action, we conclude this Court shares concurrent jurisdiction to decide this case because the Head Start Act does not provide for exclusive federal court jurisdiction. See *Gulf Offshore Co v Mobil Oil Corp*, 453 US 473, 478; 101 S Ct 2870; 69 L Ed 2d 784 (1981), on remand 628 SW2d 171 (Tex App, 1982), cert den 459 US 945 (1982).

Defendant next argues the trial court erred in granting plaintiff summary disposition and concluding the statute required defendant to reveal the bids to plaintiff. We disagree.

A motion for summary disposition under MCR 2.116(C)(10) tests whether a claim has factual support. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). We review the record in the same manner as the trial court to determine whether the moving party was entitled to judgment as a matter of law. *Morales v Auto-Owners Ins Co*, 458 Mich 288, 294; 582 NW2d 776 (1998); *Michigan Ed Employees Mut Ins Co v Turow*, 242 Mich App 112, 114-115; 617 NW2d 725 (2000). Review is limited to the evidence before the trial court when it decided the motion. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003).

We could locate no authority, state or federal, on the issue defendant presents. However, our reading of the statute indicates the trial court did not err in concluding the statute required defendant to reveal the bids to plaintiff.

Defendant contends the trial court's interpretation contradicts the plain meaning of the statute. First, defendant argues the statute applies only to requests from appropriate community groups. The statute states the agency must provide public access to information, "including public hearings at the request of appropriate community groups and reasonable public access to books and records of the agency . . . ." 42 USC 9839(a). Defendant contends "appropriate community groups" applies both to requests for public hearings and access to books and records and argues the use of "and" without a comma points to this interpretation. Plaintiff responds that the interjection of "public access" indicates the agency's books and records are available not only to these groups.

Although the provision is ambiguous in this regard, we find plaintiff's argument persuasive. The structure of the sentence indicates the agency must provide public hearings when "appropriate community groups" request them, but the agency's books and records are available for general, albeit reasonable, "public access . . . ." Interpreting the statute to allow only groups to access the information would render the "public access" language nugatory, and we avoid constructions that render any part of a statute surplusage. *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561, 574; 592 NW2d 360 (1999).

Defendant next contends it provided plaintiff reasonable access to its records by providing copies of its audits and financial statements. Defendant did not suggest why providing access to the bids would be *unreasonable*. Presumably, defendant either views the process for producing the documents as too cumbersome to be reasonable or views the content of the documents as falling outside the scope of necessary

disclosure. Regarding the first possibility, defendant's executive director, Liimatainen, testified the bids were in the agency's records and could be produced on relatively short notice. So defendant seems to concede the production of the documents is not unreasonable from an administrative standpoint.

Concerning the second possibility—that is, the content of the documents—defendant raises various arguments about why it should not have to reveal the information, but primarily argues the trial court's interpretation is too broad. Defendant notes the federal FOIA and the state FOIA include exceptions to their disclosure requirements and that courts have narrowed the scope of these acts even further. Defendant contends the trial court's interpretation improperly allows the public to conduct a fishing expedition in the records of private corporations simply because the corporations operate Head Start programs.

Yet, defendant fails to acknowledge that the statute contains limiting language. The statute requires disclosure only of books and records "involving the use of authority or funds for which it [the agency] is responsible." 42 USC 9839(a). Also, defendant does not consider that the statute's lack of exemptions and further limiting language may reflect a policy decision by Congress not to limit the disclosure requirements for Head Start agencies. Defendant claims if Congress had wished to subject Head Start programs to FOIA-type disclosure requirements, it could have simply referenced the FOIA in the act. Conversely, Congress could have referenced the FOIA if it had wished to *limit* Head Start programs' disclosure obligations to those contained in the FOIA.

Defendant also argues the bidders did not have notice that the bids would be disclosed. But the stat-

ute itself provided that notice. The bidders knew, or should have known, they were submitting bids to a Head Start agency that was bound by the disclosure obligations of 42 USC 9839(a). Moreover, Liimatainen testified that if a member of the public came to his office and asked to see the bids, he would disclose them. Thus, defendant's declination to reveal the information appears to lie in its objection to the party requesting it, not to any characteristic of the information itself.

Yet defendant's objection to plaintiff's motivation for obtaining the information does not provide a proper basis for declining to disclose it. The statute does not state that defendant may choose to whom it wishes to disclose information. Instead, it requires "reasonable public access" to the information. 42 USC 9839(a).

In addition, the statute requires disclosure of "books and records of the agency . . . involving the use of authority or funds for which it is responsible." 42 USC 9839(a). Defendant has not persuasively asserted the bids do not meet these criteria. The trial court concluded defendant's purchase of furniture and equipment for its Head Start programs concerns the use of funds for which it is responsible. We agree. The statute requires disclosure of "books and records of the agency . . . ." While the trial court indicated that certain documents, such as personnel files, might not be subject to disclosure, the statute provides no basis for exempting the requested bids from disclosure. Additionally if the bids contained secret trade information, as Liimatainen suggested, defendant could comply with the statute by redacting the documents to protect confidentiality. Defendant did not

demonstrate redaction would be laborious or otherwise make plaintiff's request unreasonable.

Finally, defendant asserts the trial court erred in finding plaintiff had a genuine reason for seeking disclosure of the bids. Defendant contends plaintiff sought disclosure for purely commercial reasons: because it was "shocked" to learn it had not won the bid and wanted to gain information to allow it to improve future bids. We concur in the trial court's conclusion that plaintiff had a genuine reason for requesting the bids, that is, to ensure the bid process had been properly conducted, that the vendors were on equal footing before the agency, and that the agency properly spent its federal funds. Defendant claims that merely revealing its bid procedure provides accountability and allows the public to monitor the agency's expenditure of public funds, but we conclude that only by revealing the actual bids may the public know that the bid procedure was properly followed. Further, plaintiff's reason for requesting the bids is irrelevant. The statute does not limit the disclosure requirement. It requires defendant to provide reasonable public access to its books and records when they are requested for *any* reason.

Next, defendant asserts public policy counsels against interpreting the statute to require disclosure of the bids. Defendant argues the court's interpretation effectively transforms a private, non-profit organization into a public entity. Also, defendant contends the decision could have far-reaching effects, subjecting all private organizations that receive federal funds to similar disclosure requirements.

While we do not deny these may be valid concerns, they represent policy considerations for the Legislature, not this Court, to weigh. In interpreting a stat-

ute, we may not impose a construction based on a different policy decision than the one the Legislature has chosen. *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 752; 641 NW2d 567 (2002); see also *City of Lansing v Lansing Twp*, 356 Mich 641, 648; 97 NW2d 804 (1959) (" 'The duty of the Court is to interpret the statute as we find it. The wisdom of the provision in question in the form in which it was enacted is a matter of legislative responsibility with which courts may not interfere.' ") (citation omitted).

Additionally, defendant's arguments may be dismissed on other grounds. First, defendant's argument that the court's interpretation transformed a private, non-profit organization into a public entity is misplaced. HHS defines "Head Start Agency" to include private, non-profit organizations designated to operate Head Start programs. 45 CFR 1301.2. The parties do not dispute defendant meets this definition because it has been designated to operate a Head Start program in Baraga, Houghton, and Keweenaw counties. The statute at issue then requires each "Head Start agency" to provide reasonable public access to its books and records in regard to fiscal matters. 42 USC 9839(a). So, Congress and HHS—not the trial court—decided private, non-profit organizations must open their books to the public. The policy decisions have rested where they should, with Congress and administrative agencies.

Defendant also relies on *State Defender Union Employees v Legal Aid & Defender Ass'n of Detroit*, 230 Mich App 426; 584 NW2d 359 (1998), to support its argument that a private, non-profit organization should not be required to open its books to the public. In that case, this Court ruled a private, non-profit organization that was financed by both private and

public funds and provided legal services to indigent persons was not required to disclose its financial reports and data to its employees. *Id.* at 432-433. The panel concluded, "an otherwise private organization is not 'funded by or through state or local authority' merely because public monies paid in exchange for goods provided or services rendered comprise a certain percentage of the organization's revenue." *Id.* But the plaintiffs in that case sought disclosure under the FOIA. *Id.* at 427. The trial court in this case ruled defendant was not subject to FOIA disclosure requirements, and that ruling is not at issue on appeal. Therefore, the case is inapposite.

Next, defendant's argument that the trial court's decision could have far-ranging effect is unpersuasive because the statute is limited to Head Start agencies, as defined by 45 CFR 1301.2, 42 USC 9839(a), and our decision is to be narrowly applied to the facts of this case. The statute cannot be applied to other federally funded programs. Defendant also argues the interpretation could lead to disclosure of records pertaining to any third-party entity with which an agency contracts and disclosure by companies providing fleet vehicles for HHS. The duty of third parties to disclose their records is not at issue in this case. But the statute requires disclosure of the records and books "of the agency *or other agencies engaged in program activities or operations* . . . ." 42 USC 9839(a). Thus, the determination of who will be required to disclose information has properly rested with the policy makers.

Finally, defendant asserts the trial court erred in failing to defer to the HHS's interpretation of the statute at issue. This Court may defer to administrative agency interpretations of statutes the agency is

responsible to administer. *Adrian School Dist v Michigan Pub School Employees' Retirement Sys*, 458 Mich 326, 336; 582 NW2d 767 (1998). Generally, we defer to an agency interpretation unless that interpretation is clearly wrong. *Faircloth v Family Independence Agency*, 232 Mich App 391, 406; 591 NW2d 314 (1998).

HHS wrote two letters regarding this situation, in which it concluded that defendant could comply with the statute simply by providing copies of its procurement procedures and that defendant need not reveal specific information about the bids it received. Absent a more definitive ruling on this matter from the upper echelon of the agency staff or the agency secretary himself, we do not feel bound to follow the agency's interpretation.

Additionally, we conclude the agency interpretation is not entitled to deference because it is clearly wrong. 42 USC 9839(a) requires that Head Start agencies provide reasonable public access to their books and records dealing with their use of funds. As discussed, the statute does not limit the disclosure requirement to the agency's procedures without allowing access to the documents that reveal how the agency put those procedures into effect. HHS did not indicate in its letter why that limit should be imposed.

Affirmed.