**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 8, 2005**

OFFICE PLANNING GROUP, INC.,

    Plaintiffs-Appellee,

v                                   No. 125448

BARAGA-HOUGHTON-KEWEENAW
CHILD DEVELOPMENT BOARD,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

Plaintiff is a disappointed bidder that seeks disclosure from defendant of bid documents under 42 USC 9839(a), a provision of the federal Head Start Act[1] that requires Head Start agencies to provide for "reasonable public access" to information. Defendant Head Start agency contends that the act does not create a private cause of action to enforce its provisions. We hold that the Head Start Act does not contemplate a private cause of action seeking disclosure of the contested bid documents under § 9839(a). Accordingly, we reverse the judgment of

---

[1] 42 USC 9831 *et seq.*

the Court of Appeals and enter judgment in favor of defendant.

## I. FACTS AND PROCEDURAL HISTORY

Defendant, Baraga-Houghton-Keweenaw Child Development Board, Inc., is a private, nonprofit organization that is designated as a Head Start[2] agency under 42 USC 9836(a).[3] Defendant operates Head Start programs in Baraga, Houghton, and Keweenaw counties. In January 2001, defendant solicited bids for office supplies and furniture. Plaintiff, a private, for-profit corporation, submitted a bid. Defendant conducted an open meeting at which its building committee reviewed the bids and made a recommendation to its board of directors. Defendant

---

[2] See section III(A) of this opinion.

[3] 42 USC 9836(a) provides:

> The Secretary [of Health and Human Services] is authorized to designate as a Head Start agency any local public or private nonprofit or for-profit agency, within a community, which (1) has the power and authority to carry out the purposes of this subchapter [42 USC 9831 et seq.] and perform the functions set forth in section 642 [42 USC 9837] within a community; and (2) is determined by the Secretary (in consultation with the chief executive officer of the State involved, if such State expends non-Federal funds to carry out Head Start programs) to be capable of planning, conducting, administering, and evaluating, either directly or by other arrangements, a Head Start program.

accepted the lowest bid at the open meeting. Rodney Liimatainen, defendant's executive director, notified plaintiff's branch manager, Jack Hamm, that plaintiff's bid had exceeded the lowest bid by $10,000.

Hamm, suspicious that the lower bidders had offered lesser-quality merchandise, requested copies of all the bids submitted. Liimatainen informed Hamm that the details of the bids were unavailable for inspection by the public because the other bidders did not want the information disseminated. Liimatainen acknowledged, however, that there might be small discrepancies in quality, manufacturer, and type of product among the bids submitted. In an attempt to compel defendant to disclose copies of the bids, Hamm then submitted written requests to defendant under the Michigan Freedom of Information Act (FOIA).[4] Defendant refused the requests on the basis that it was a private corporation that was not subject to the FOIA. Plaintiff also requested copies of the submitted bids from the Department of Health and Human Services (HHS), the federal agency responsible for administering the Head Start Act.

---

[4] MCL 15.231 *et seq.*

In April 2001, plaintiff filed an action under the FOIA[5] demanding a complete copy of each bid.  Plaintiff later filed an amended complaint alleging that it was additionally entitled to disclosure of the bid information under unspecified "federal legislation which requires disclosure of information by parties supplying service under the so-called Head Start Program."  In subsequent motion papers, plaintiff indicated that the federal legislation on which it relied was 42 USC 9839(a), which provides, in relevant part:

> Each [Head Start] agency shall also provide for reasonable public access to information, including public hearings at the request of appropriate community groups and reasonable public access to books and records of the agency or other agencies engaged in program activities or operations involving the use of authority or funds for which it is responsible.

After the commencement of the litigation, various HHS officials issued memoranda indicating that defendant was not required under the FOIA or the Head Start Act to provide plaintiff with access to the bid information.  In a letter to defendant, a program officer in the Chicago regional office of the HHS advised defendant that Head

---

[5]  Although the trial court treated plaintiff's complaint as if it contained a claim under the federal Freedom of Information Act, 5 USC 551 *et seq.*, the parties agree that plaintiff's claim was based solely on the Michigan FOIA.

4

Start grantees are not subject to the FOIA provisions. The program officer further noted that, under § 9839(a) and its corresponding HHS regulation, 45 CFR 1301.30,[6] defendant was not required to disclose specific information regarding the selection of a supplier; rather, it was required only to disclose general information such as copies of its written procurement procedures.

Similarly, in a letter to plaintiff's counsel, the director of the HHS Office of Public Affairs, FOI/Privacy Acts Division, stated that the FOIA did not apply to defendant; however, the director noted that defendant had provided plaintiff with a copy of the policy it followed in conducting its procurement activities and with background documents addressing its source of funding.

The director also wrote a letter advising defense counsel that defendant was not subject to the requirements of the federal Freedom of Information Act.[7]  The director

_____

[6] 45 CFR 1301.30 provides:

> Head Start agencies and delegate agencies shall conduct the Head Start program in an effective and efficient manner, free of political bias or family favoritism. *Each agency shall also provide reasonable public access to information and to the agency's records pertaining to the Head Start program.* [Emphasis supplied.]

[7] 5 USC 551 *et seq.*

further advised counsel that defendant was bound by any provisions incorporated into the grant language regarding its obligations to make information concerning its activities available to the public, but that defendant had already complied with those requirements.

Finally, in a letter written to Congressman Bart Stupak, who had apparently come to plaintiff's aid in seeking the bid documents, the director of the HHS Office of Family and Child Development stated that defendant had reasonably complied with the requirements of § 9839 and 45 CFR 1301.30 by providing plaintiff with a copy of its procurement procedures, and that defendant was under no further obligation to provide documents with specific commercial information it received through the competitive bid process.

Citing these HHS memoranda, defendant moved for summary disposition, arguing that it was not subject to the Michigan FOIA or the federal FOIA and that defendant had exceeded any obligation it had to supply plaintiff with information under 42 USC 9839(a).

The trial court granted defendant's motion for summary disposition to the extent that plaintiff sought

relief under the Michigan FOIA and the federal FOIA.[8]  The court, however, sua sponte granted summary disposition in favor of plaintiff under MCR 2.116(I)(2) on the ground that the requested information was subject to disclosure under § 9839(a).  The court, observing that § 9839(a) required that a Head Start agency grant "reasonable public access" to its books and records, opined that

> [a] demand that information be provided outside of working hours would not be reasonable.  A demand that an agency exhaustively search for something that the requesting party cannot properly identify would not be reasonable.  As recognized by the Michigan Freedom of Information Act, it would likely not be reasonable to expect an agency to create a record, such as a compilation or summary, when no such record exists.  And it may well not be reasonable to demand that an employee's personnel file or disciplinary record be disclosed.
>
> In the present situation, a denial by the Plaintiff of a written request to review specified, existing and readily accessible written bids is certainly not compliant with a requirement of providing reasonable public access.  That would be true regardless of who made the request, but the case is even more compelling when the requesting party has a genuine, identifiable reason for the information sought, as did the Plaintiff.
>
> In summary, Defendant's denial of Plaintiff's request to review and obtain copies of the bids in question was in violation of the Federal requirement that Plaintiff provide for reasonable public access to information, including reasonable public access to books and

---

[8] See note 5.  Plaintiff's FOIA claims are not at issue in this appeal.

records of the agency, involving the use of funds for which the Plaintiff is responsible.

The Court of Appeals affirmed.[9]  Noting that the state courts shared concurrent jurisdiction to decide a case involving the Head Start Act because the act did not provide for exclusive federal jurisdiction,[10] the panel rejected the reasoning of federal case law holding that the Head Start Act does not provide a private cause of action.[11]  The panel, citing *Long v Chelsea Community Hosp*, 219 Mich App 578; 557 NW2d 157 (1996), and *Forster v Delton School Dist*, 176 Mich App 582, 585; 440 NW2d 421 (1989), held that a private cause of action could be *inferred* under § 9839(a) because the statute did not provide adequate means to enforce its provisions:

> The statute in question, 42 USC 9839(a), requires Head Start agencies to provide reasonable public access to their books and records, but it does not provide any means of enforcing this specific provision.  Although the Head Start Act requires agencies to open their books and records to the department secretary or the United States Comptroller General for audit

---

[9] *Office Planning Group, Inc v Baraga-Houghton-Keweenaw Child Dev Bd*, 259 Mich App 279; 674 NW2d 686 (2003).

[10] *Gulf Offshore Co v Mobil Oil Corp*, 453 US 473, 478; 101 S Ct 2870; 69 L Ed 2d 784 (1981).

[11] See *Johnson v Quin Rivers Agency for Community Action, Inc*, 128 F Supp 2d 332, 336 (ED Va, 2001); *Hodder v Schoharie Co Child Dev Council, Inc*, 1995 US Dist LEXIS 19049 (ND NY, 1995).

and examination, 42 USC 9842, Congress specifically provided for public access to the books and records, not simply to the audits prepared by these other entities. Therefore, we conclude an implied private cause of action exists.[12]

The panel concluded that the trial court did not err in granting summary disposition for plaintiff because defendant had not complied with the "reasonable public access" requirement of § 9839(a). The panel, noting that defendant had failed to suggest why it would be *unreasonable* to disclose the requested information, held that because the information was readily available and could be produced on short notice, it was covered by the statutory directive to provide "reasonable public access."[13] The panel rejected defendant's contention that the bidders did not have notice that the bids would be disclosed, stating that the statute itself provided that notice; the panel also rejected defendant's argument that public policy dictated against interpreting the statute to require disclosure of the bids.[14] Finally, the panel held that it was not required to defer to the interpretation of § 9839(a) set forth in the letters written by HHS

---

[12] 259 Mich App at 289-290 (emphasis deleted).

[13] 259 Mich App at 290-292.

[14] 259 Mich App at 292-295.

officials, opining that only a ruling from the "upper echelon" of the HHS would be entitled to deference and that, in any event, the officials' interpretation was clearly wrong.[15]

We granted defendant's application for leave to appeal.[16] Because we conclude that § 9839(a) does not provide for a private cause of action, we reverse the judgment of the Court of Appeals and enter judgment in favor of defendant.

## II. STANDARD OF REVIEW

This case presents issues of statutory construction and other questions of law. Such questions are subject to review de novo by this Court.[17] Similarly, we review a trial court's grant of summary disposition de novo.[18]

---

[15] **259 Mich App at 297.**

[16] **470 Mich 888 (2004).**

[17] *Preserve the Dunes, Inc v Dep't of Environmental Quality,* 471 Mich 508, 513; 684 NW2d 847 (2004); *Mack v Detroit,* 467 Mich 186, 193; 649 NW2d 47 (2002); *Grand Traverse Co v Michigan,* 450 Mich 457, 463-464; 538 NW2d 1 (1995).

[18] *Mack, supra* at 193.

### III. ANALYSIS

#### A. INTRODUCTION

The Head Start Act was enacted for the purpose of "promot[ing] school readiness by enhancing the social and cognitive development of low-income children through the provision, to low-income children and their families, of health, educational, nutritional, social, and other services that are determined, based on family needs assessments, to be necessary."[19] The secretary of the HHS is authorized under 42 USC 9836(a) to designate as a Head Start agency "any local public or private nonprofit or for-profit agency . . . ." The act further authorizes the secretary to provide financial assistance or grants to Head Start agencies for the operation of Head Start programs.[20]

Under 42 USC 9836a, the secretary is directed to establish by regulation standards applicable to Head Start agencies, including performance standards, administrative and financial management standards, and standards relating to the conditions and location of agency facilities. The secretary has promulgated regulations implementing these

---

[19] 42 USC 9831; see also *Action for Boston Community Dev, Inc v Shalala*, 136 F3d 29, 30 (CA 1, 1998).

[20] 42 USC 9833 to 9835; *Community Action of Laramie Co, Inc v Bowen*, 866 F2d 347, 348 (CA 10, 1989).

statutory directives.[21]  The secretary is directed under 42 USC 9836a(c) and (d) to monitor Head Start agencies for compliance with statutory and regulatory standards and to take corrective action if necessary.  If an agency does not comply with such standards, the secretary may initiate proceedings to terminate the designation of the agency unless the agency corrects the deficiency.[22]

At issue in this case is § 9839(a) of the act, which provides as follows:

> Each Head Start agency shall observe standards of organization, management, and administration which will assure, so far as reasonably possible, that all program activities are conducted in a manner consistent with the purposes of this subchapter [42 USC  9831 *et seq.*] and the objective of providing assistance effectively, efficiently, and free of any taint of partisan political bias or personal or family favoritism.  Each such agency shall establish or adopt rules to carry out this section, which shall include rules to assure full staff accountability in matters governed by law, regulations, or agency policy. *Each agency shall also provide for reasonable public access to information, including public hearings at the request of appropriate community groups and reasonable public access to books and records of the agency or other agencies engaged in program activities or operations involving the use of authority or funds for which it is responsible.* Each such agency shall adopt for itself and other agencies using funds or exercising authority for which it is responsible, rules designed to (1) establish specific standards governing salaries,

---

[21] See 45 CFR 1304.1.

[22] 42 USC 9836a(d)(1)(C).

salary increases, travel and per diem allowances, and other employee benefits; (2) assure that only persons capable of discharging their duties with competence and integrity are employed and that employees are promoted or advanced under impartial procedures calculated to improve agency performance and effectiveness; (3) guard against personal or financial conflicts of interest; and (4) define employee duties in an appropriate manner which will in any case preclude employees from participating, in connection with the performance of their duties, in any form of picketing, protest, or other direct action which is in violation of law. [Emphasis supplied.]

Similarly, Head Start regulation 45 CFR 1301.30 provides that "[e]ach agency shall also provide reasonable public access to information and to the agency's records pertaining to the Head Start program."

The lower courts concluded that defendant was required under the "reasonable public access" provision of § 9839(a) to disclose copies of all bids it received in connection with its January 2001 solicitation of bids for office supplies and furniture. In considering the propriety of the lower courts' rulings, we must first determine whether the trial court properly exercised jurisdiction over plaintiff's claim under § 9839(a). Next, we must examine whether § 9839(a) allows for plaintiff's private cause of action to enforce the disclosure provision. Although we conclude that the state courts have jurisdiction over this action, we hold that § 9839(a) does not provide for a private cause of action.

13

## B. CONCURRENT JURISDICTION

Defendant first argues that the state courts lack jurisdiction over plaintiff's claim under the federal Head Start Act.[23]  We disagree and hold that the state courts

---

[23] We note initially that defendant, in support of its assertion that subject-matter jurisdiction is lacking, presents a hodgepodge, "shotgun approach" argument that conflates the concepts of exhaustion of remedies, primary jurisdiction, "*Chevron* doctrine" deference, and existence of a private cause of action under the federal statute at issue, making it rather difficult to discern what precisely it is that defendant is arguing.  These concepts are not, in fact, jurisdictional in nature.  See, e.g., *Northwest Airlines, Inc v Kent Co, Michigan*, 510 US 355, 365; 114 S Ct 855; 127 L Ed 2d 183 (1994) ("The question whether a federal statute creates a claim for relief is not jurisdictional.").

In light of our determination that the Head Start Act, in the first instance, does not provide for a private cause of action to enforce the public access requirement of § 9839(a), it is unnecessary to address defendant's assertion that primary jurisdiction over this cause of action lies with the HHS, see *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185; 631 NW2d 733 (2001), and its related argument that plaintiff failed to exhaust administrative remedies before filing this state-court action.  However, we note that this case presents a straightforward issue of statutory construction involving the meaning of the simple phrase "reasonable public access."  The interpretation of this particular statutory language does not require knowledge of sophisticated or technical terms or the exercise of expert judgment or discretion.  Because the "reasonable public access" provision presents a matter that the judiciary is particularly competent to address, rather than a matter within the "specialized and expert knowledge" of the HHS, see *id*. at 198, primary jurisdiction does not lie with that agency.  Moreover, there are no "prescribed administrative remedies" that plaintiff has failed to exhaust before seeking relief under § 9839(a) from the

Footnotes continued on following page.

14

courts. *McCarthy v Madigan*, 503 US 140, 144-145; 112 S Ct 1081; 117 L Ed 2d 291 (1992).

Defendant's somewhat cryptic assertion that the state courts are required to give deference to the HHS's interpretation of § 9839(a) warrants additional comment. Citing the "*Chevron* doctrine," see *Chevron USA Inc v Natural Resources Defense Council, Inc*, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984), defendant argues that the state courts are required to give deference to the determinations of HHS officials regarding the disclosure required under the act and that the state courts therefore lack jurisdiction over this action. Again, defendant is conflating two discrete doctrines. The concept of *Chevron* deference is not jurisdictional; rather, it is a doctrine that is in the nature of a *standard of review*, applied by the judiciary in reviewing an agency's reasonable construction of an ambiguous statute, which recognizes that any necessary policy determinations in interpreting a federal statute are more properly left to the agency responsible for administering the particular statute. See *Yellow Transportation, Inc v Michigan*, 537 US 36, 47-48; 123 S Ct 371; 154 L Ed 2d 377 (2002); *United States v Mead Corp*, 533 US 218, 227-228; 121 S Ct 2164; 150 L Ed 2d 292 (2001), quoting *Chevron, supra* at 844 ("'considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer'").

Again, because we have determined that there is no private cause of action to enforce the disclosure requirement of the Head Start Act, we need not address whether the state courts are required, under *Chevron* and *Mead, supra*, to accord deference to the letters authored by these HHS officials. However, we note in passing that these letters presumably lack the "force of law" that is generally required for application of *Chevron*-type deference. See, e.g., *Shalala v Guernsey Mem Hosp*, 514 US 87, 99; 115 S Ct 1232; 131 L Ed 2d 106 (1995) (noting that administrative interpretive rules, which do not require notice and comment, "do not have the force and effect of law and are not accorded that weight in the adjudicatory process"); *Northwest Airlines, supra* at 366-367 (noting that a "reasoned decision" of the Secretary of Transportation would be entitled to *Chevron*-type deference in a dispute over the meaning of a provision of the Anti-Head Tax Act, 49 USC 1513); *Human Development Corp of*

Footnotes continued on following page.

have concurrent jurisdiction with the federal courts to entertain plaintiff's action seeking relief under § 9839(a).

It has long been established that, so long as Congress has not provided for exclusive federal-court jurisdiction, state courts may exercise subject-matter jurisdiction over federal-law claims "'whenever, by their own constitution, they are competent to take it.'"[24] State courts possess sovereignty concurrent with that of the federal government, "subject only to limitations imposed by the Supremacy Clause."[25] Thus, state courts are presumptively competent to assume jurisdiction over a

---

*Metropolitan St Louis v United States Dep't of Health & Human Services*, 312 F3d 373, 379 (CA, 8, 2002) (applying *Chevron* deference to a final decision of the HHS's Departmental Appeals Board interpreting an HHS regulation); see also *Mead, supra* at 236, n 17; *Christensen v Harris Co*, 529 US 576, 586-587; 120 S Ct 1655; 146 L Ed 2d 621 (2000).

[24] *Tafflin v Levitt*, 493 US 455, 459; 110 S Ct 792; 107 L Ed 2d 887 (1990), quoting *Claflin v Houseman*, 93 US 130, 136; 23 L Ed 833 (1876).

[25] *Tafflin, supra* at 458. See US Const, art VI, cl 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

cause of action arising under federal law.[26] If concurrent jurisdiction otherwise exists, subject-matter jurisdiction over a federal-law claim is governed by state law.[27]

In determining whether our state courts enjoy concurrent jurisdiction over a claim brought under federal law, it is necessary to determine whether Congress intended to limit jurisdiction to the federal courts.

> "In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction. Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests."[28]

---

[26] *Tafflin, supra* at 459; *Gulf Offshore Co, supra* at 478; *Charles Dowd Box Co, Inc v Courtney*, 368 US 502, 507-508; 82 S Ct 519; 7 L Ed 2d 483 (1962).

[27] *Gulf Offshore Co, supra* at 478.

[28] *Tafflin, supra* at 459-460, quoting *Gulf Offshore Co, supra* at 478 (citations omitted); see also *Peden v Detroit*, 470 Mich 195, 201 n 4; 680 NW2d 857 (2004). Although we, of course, must apply these federal-law principles in determining whether concurrent jurisdiction exists under the federal statute, we would be remiss if we failed to note that the use of legislative history in the search for legislative intent "'is a perilous venture . . . [that is] doubly fraught with danger in Michigan which, unlike Congress, has failed to create an authoritative legislative record.'" *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587 n 7 (2001), quoting *People v Tolbert*, 216 Mich App 353, 360 n 5; 549 NW2d 61

Footnotes continued on following page.

17

Defendant does not present a coherent argument that the courts of this state lack jurisdiction over the parties' dispute concerning the disclosure of documents under § 9839(a).  Rather, defendant simply contends that the "expansive regulatory scheme" of the Head Start Act "evidences Congressional intent that the HHS exercise its sole discretion over its administration of local Head-Start agencies through its regulations."  Defendant has conflated the vesting of discretion in federal agencies with the vesting of jurisdiction in the federal courts: That a particular agency has discretion to administer a federal statute and to implement regulations for the enforcement of the statute does not address whether state courts have concurrent jurisdiction over a dispute arising under that statute.  Instead, our inquiry is limited to whether Congress intended to limit to federal courts exclusive jurisdiction over such a dispute and, if not, whether state law allows our courts to exercise subject-matter jurisdiction over the action.

Defendant concedes that nothing in the Head Start Act explicitly confines jurisdiction to the federal courts, and defendant does not point to any statutory indication

(1996).

that Congress intended that jurisdiction over a dispute under the Head Start Act should lie solely in the federal courts. We have been unable to locate anything in the legislative history of the act demonstrating an intent to grant exclusive federal-court jurisdiction, and defendant has certainly failed to bring any such information to our attention. Moreover, there is no "clear incompatibility" between state-court jurisdiction and federal interests with respect to application of the Head Start Act, particularly with respect to a straightforward question of statutory construction such as the one presented in this case. Indeed, as noted in *Gulf Offshore Co v Mobil Oil Corp*, 453 US 473, 478 n 4; 101 S Ct 2870; 69 L Ed 2d 784 (1981), "[p]ermitting state courts to entertain federal causes of action facilitates the enforcement of federal rights."

Congress has done nothing in the exercise of its powers under the Supremacy Clause to "affirmatively divest state courts of their presumptively concurrent jurisdiction" over claims brought under the Head Start Act.[29] Additionally, it is clear that the courts of this state have subject-matter jurisdiction over the dispute at

---

[29] *Yellow Freight Sys, Inc v Donnelly*, 494 US 820, 823; 110 S Ct 1566; 108 L Ed 2d 834 (1990).

issue, because our Constitution provides that the circuit courts of this state have original jurisdiction "in all matters not prohibited by law . . . ."[30]  Accordingly, we hold that the courts of this state have properly exercised concurrent jurisdiction over plaintiff's § 9839(a) claim.

### C.  PRIVATE CAUSE OF ACTION TO ENFORCE § 9839(a)

Defendant next contends that plaintiff's claim fails because § 9839(a) does not provide for a private cause of action to enforce the public access requirement.  We agree.

#### 1.  WHETHER A CAUSE OF ACTION EXISTS IS SOLELY A MATTER OF STATUTORY CONSTRUCTION

"'[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.'"[31] Rather, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress."[32]  Thus, in determining whether plaintiff may bring a private cause of action to enforce the public

---

[30] Const 1963, art 6, § 13.

[31] *Touche Ross & Co v Redington*, 442 US 560, 568; 99 S Ct 2479; 61 L Ed 2d 82 (1979), quoting *Cannon v Univ of Chicago*, 441 US 677, 688; 99 S Ct 1946; 60 L Ed 2d 560 (1979).

[32] *Alexander v Sandoval*, 532 US 275, 286; 121 S Ct 1511; 149 L Ed 2d 517 (2001); see also *Touche Ross & Co, supra* at 578.

access requirement of § 9839(a), we must determine whether Congress intended to create such a cause of action.[33] Because the Head Start Act does not evidence an intent to create a private remedy for an alleged violation of § 9839(a), plaintiff's action must be dismissed.

Although the United States Supreme Court in the last century embraced a short-lived willingness to create remedies to enforce private rights,[34] the Court "abandoned" that approach to statutory remedies in *Cort v Ash*[35] and "[has] not returned to it since."[36]  In *Cort*, the Court set

---

[33] *Alexander, supra* at 286-287.

[34] See, e.g., *Bivens v Six Unknown Named Agents of Fed Bureau of Narcotics*, 403 US 388; 91 S Ct 1999; 29 L Ed 2d 619 (1971) (inferring a private cause of action for damages to enforce the Fourth Amendment guarantee against unreasonable searches and seizures); *J I Case Co v Borak,* 377 US 426, 433; 84 S Ct 1555; 12 L Ed 2d 423 (1964) (holding that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose" of a federal statute).  See also, generally, *Correctional Services Corp v Malesko*, 534 US 61, 75; 122 S Ct 515; 151 L Ed 2d 456 (2001) (Scalia, J., concurring) (noting that "*Bivens* is a relic of the heady days in which this Court assumed common-law powers to create causes of action—decreeing them to be 'implied' by the mere existence of a statutory or constitutional prohibition"); Note, *Section 1983 and implied rights of action: Rights, remedies, and realism*, 90 Mich L R 1062, 1071-1083 (1992) (exploring the evolution of the United States Supreme Court's implied right of action jurisprudence and its subsequent retreat).

[35] 422 US 66; 95 S Ct 2080; 45 L Ed 2d 26 (1975).

[36] *Alexander, supra* at 287.

21

forth a test for determining whether a private remedy is implicit in a statute that does not expressly provide such a remedy:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?[37]

Post-*Cort*, the Court has become increasingly reluctant to imply a private cause of action, preferring to focus exclusively on the second *Cort* element, which requires indicia of congressional intent to create a cause of action. For example, as early as *Cannon v Univ of Chicago*,[38] although the Court applied each of the *Cort* factors, it characterized the determination whether a private remedy existed to enforce a statutory right as a matter of "statutory construction."[39] In *Touche Ross &*

---

[37] *Cort, supra* at 78 (emphasis deleted).

[38] 441 US 677, 688; 99 S Ct 1946; 60 L Ed 2d 560 (1979).

[39] See also *Merrell Dow Pharmaceuticals Inc v Thompson*, 478 US 804, 812; 106 S Ct 3229; 92 L Ed 2d 650
Footnotes continued on following page.

Co,[40] the Court declined to even address the remaining *Cort* factors where it was clear that Congress did not intend to create a private cause of action to enforce § 17(a) of the Securities Exchange Act of 1934:[41]

> It is true that in *Cort* v. *Ash*, the Court set forth four factors that it considered "relevant" in determining whether a private

---

(1986), noting that it would "flout congressional intent to provide a private federal remedy" for an alleged violation of the federal Food, Drug, and Cosmetic Act, 21 USC 301 *et seq.*:

> See, *e.g.*, *Daily Income Fund, Inc.* v. *Fox*, 464 US 523, 535-536 (1984) ("In evaluating such a claim, our focus must be on the intent of Congress when it enacted the statute in question."); *Middlesex County Sewerage Authority* v. *National Sea Clammers Assn.*, 453 U.S., at 13 ("The key to the inquiry is the intent of the Legislature."); *Texas Industries, Inc.* v. *Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981) ("Our focus, as it is in any case involving the implication of a right of action, is on the intent of Congress."); *California* v. *Sierra Club*, 451 U.S. at 293 ("[The] ultimate issue is whether Congress intended to create a private right of action."); *Northwest Airlines, Inc.* v. *Transport Workers*, 451 U.S. 77, 91 (1981) ("The ultimate question in cases such as this is whether Congress intended to create the private remedy."); *Transamerica Mortgage Advisors, Inc.* v. *Lewis*, 444 U.S. 11, 15 (1979) ("The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction."); *Touche Ross & Co.* v. *Redington*, 442 U.S. 560, 568 (1979) ("The question of the existence of a statutory cause of action is, of course, one of statutory construction."). [*Merrell, supra* at 812 n 9.]

[40] *Touche Ross &* Co, supra at 575-576.

[41] 15 USC 78q(a).

23

remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort*—the language and focus of the statute, its legislative history, and its purpose, see 422 U.S. at 78—are ones traditionally relied upon in determining legislative intent. Here, the statute by its terms grants no private rights to any identifiable class and proscribes no conduct as unlawful. And the parties as well as the Court of Appeals agree that the legislative history of the 1934 Act simply does not speak to the issue of private remedies under § 17 (a). At least in such a case as this, the inquiry ends there: The question whether Congress, either expressly or by implication, intended to create a private right of action, has been definitely answered in the negative.

Similarly, in *California v Sierra Club*,[42] the Court, noting that "the focus of the inquiry is on whether Congress intended to create a remedy," concluded that consideration of the first two *Cort* factors was dispositive. Because there was no indication that Congress intended to create a private remedy to enforce § 10 of the Rivers and Harbors Appropriation Act of 1899,[43] the Court held that it was unnecessary to inquire further into the remaining factors, because "[t]hese factors are

---

[42] 451 US 287, 297; 101 S Ct 1775; 68 L Ed 2d 101 (1981).

[43] 33 USC 403.

24

only of relevance if the first two factors give indication of congressional intent to create the remedy."[44]

In *Alexander,* the Court appears to have abandoned the *Cort* inquiry altogether in favor of a completely textual analysis in determining whether a private remedy exists under a particular statute. Rather than applying the *Cort* factors, the *Alexander* Court concluded, solely on the basis of the text of 42 USC 2000d-1, that private individuals could not sue to enforce disparate-impact regulations promulgated under Title VI of the Civil Rights Act of 1964. The Court rejected the plaintiff's argument that dispositive weight could be accorded to context shorn of text, holding that "legal context matters only to the extent it clarifies text."[45] The *Alexander* majority additionally rejected the dissent's claim that the position adopted "'blind[ed] itself to important evidence of congressional intent,'" noting that the methodology

---

[44] *Sierra Club, supra* at 298.

This Court has also noted the paramount importance of legislative intent in determining whether a private cause of action can be founded on an alleged violation of a statute. See *Gardner v Wood*, 429 Mich 290, 302 n 6; 414 NW2d 706 (1987) (noting that *Cort* marked "the beginning of a trend in the federal courts to reserve the creation of civil remedies from penal violations only where to do so [was] clearly consistent with affirmative legislative intent").

[45] *Alexander, supra* at 288.

25

employed in the majority opinion was well established in earlier decisions that explained "that the interpretive inquiry begins with the text and structure of the statute . . . and ends once it has become clear that Congress did not provide a cause of action."[46]

## 2. THE HEAD START ACT DOES NOT PROVIDE FOR A PRIVATE CAUSE OF ACTION

With the aforementioned principles in mind, we examine the text of the Head Start Act to determine

---

[46] *Id*. at 288 n 7.

Our dissenting colleagues assert that we have incorrectly characterized *Touche Ross & Co* and *Alexander* as representing a departure from the four-factor *Cort* test. *Post* at 3-4. Whether the United States Supreme Court will, in the future, continue to apply the four-part *Cort* test is, however, simply irrelevant where it is clear from the text of the statute at issue that Congress did not intend to create a private enforcement action. Indeed, this case is directly analogous to *Touche Ross & Co* and *Alexander.* As the dissent points out, the provisions at issue in *Touche Ross & Co* and *Alexander* neither conferred rights on individuals nor proscribed conduct as unlawful. The same can certainly be said of 42 USC 9839(a). Similarly, the dissent notes that the *Alexander* Court found it quite telling that the statute at issue expressly empowered governmental agencies to enforce regulations. The Head Start Act does *precisely* that, by directing the secretary to establish regulations governing Head Start agencies and to enforce those regulations, and, in 42 USC 9839(a), by requiring Head Start agencies to conduct program activities in conformity with the Head Start Act and to establish or adopt rules to carry out that duty.

We note, in passing, that Justice Weaver's separate dissent merely echoes the longer dissent of Justice Kelly. Accordingly, we respond to both in kind.

26

whether it provides for a private cause of action to enforce § 9839(a).

To date, two federal district courts have considered whether causes of action existed under different provisions of the Head Start Act. Although our Court of Appeals cited these cases, it rejected their analyses without explanation.

In *Hodder, supra*, the United States District Court for the Northern District of New York applied the *Cort* factors and concluded that the plaintiffs, former employees of a Head Start agency, could not bring a cause of action for wrongful discharge under the Head Start Act:

> Turning to the first [*Cort*] factor, plaintiffs are far-removed from the class for whose special benefit Congress enacted the Head Start Act. The purpose of this Act is to authorize the appropriation of funds for Project Head Start's "effective delivery of comprehensive health, educational, nutritional, social and other services to economically disadvantaged children and their families." 42 USC § 9831(a). Hence, the class for whose special benefit Congress passed the Head Start Act is the class of economically disadvantaged children and their families who need the specified services, which do not under any reasonable interpretation of the Act include employment services. Indeed, a Head Start agency would likely violate the Act if it employed the parent of Head Start child. See 42 USC § 9839(a)(3). Plaintiffs' assertion that "employees of Head Start agencies . . . are members of a class which is specially addressed are protected by the Act and regulations" is legally unsupported and legally unsupportable. . . . Congress plainly did not enact the Head Start Act in order to benefit Head Start employees.

27

As to the second Cort factor, the Court has found no indication that Congress intended the Act or its interpretive regulations to create a private right of action for employees who are terminated from Head Start agencies in a manner allegedly inconsistent with those rules. Plaintiffs admit that the Act lacks any explicit indication that Congress intended to create a cause of action for these employees, but argue that § 9849(b) of the Act "specifically negates any intent to deny such a cause of action." . . . Section 9849(b) concerns the application of the Civil Rights Act to any sexual discrimination that may occur in connection with Head Start programs or activities. The last sentence states that the section "shall not be construed as affecting any other legal remedy that a person may have if such person is . . . denied employment in connection with[] any [Head Start] program, project, or activity . . . ."

At best, this sentence reveals a congressional unwillingness to interfere with any of the state and federal remedies that may be available to people who are denied jobs at Head Start agencies; it certainly does not reveal a congressional intent to create a private right of action under the Head Start Act for people who are fired from Head Start agencies. As plaintiffs surely realize, if courts inferred from Congress' failure to prohibit a private cause of action the congressional intent to create a private cause of action, courts would read into almost every federal statute an implied right of action. In the majority of instances, this curious interpretive method would undermine congressional intent rather than effectuate it. It also runs counter to the Supreme Court's demonstrated reluctance to infer private causes of action from federal statutes. . . .

Plaintiffs fare no better under the third Cort factor because implying a private right of action from the Head Start Act would do little or nothing to further the underlying purposes of the legislative scheme. . . .

* * *

28

We now come to the fourth Cort factor. Plaintiffs cast their claim as one "based on employee discharge in violation of federal policies . . . ." . . . For purposes of determining the existence of subject matter jurisdiction, however, the Court considers the true nature of plaintiffs' action. . . . Although plaintiffs carefully avoid the phrase in their complaint, the essence of their claim is breach of an employment contract. Actions of this kind are traditionally relegated to state law. Thus the fourth Cort factor, along with the first three, strongly support the conclusion that the Head Start Act does not contain an implied private right of action for people who are terminated from Head Start agencies.[47]

Similarly, in *Johnson, supra*, the plaintiff alleged that the defendants had mismanaged a Head Start program in violation of federal regulations. The District Court for the Eastern District of Virginia held that Congress did not intend to provide a private cause of action to enforce the federal regulations:

> In this case, the applicable statutory scheme is set forth pursuant to the Head Start Act, 42 U.S.C. §§ 9831-9852a. Under the scheme, the Secretary of the Department of Health and Human Services is directed to "establish by regulation standards applicable to Head Start agencies, programs, and projects under this subchapter," including "minimum levels of overall accomplishment that a Head Start agency shall achieve." 42 U.S.C. § 9836a(a)(1) & (2). The Secretary is also directed under this section to monitor the performance of every Head Start program and to take appropriate corrective action when a program fails to meet the performance standards established by the regulations.

---

[47] *Hodder, supra* at *11-*16 (citations omitted).

> Specifically, the Act requires a full review of each grantee at least once during each three-year period, review of new grantees after the completion of the first year, follow up reviews and return visits to grantees that fail to meet the standards, and "other reviews as appropriate." 42 U.S.C. § 9836a(c). If the Secretary determines, on the basis of such a review, that a grantee fails to meet the standards described in § 9836a(a), the Secretary shall, *inter alia*, institute proceedings to terminate the Head Start grant unless the agency corrects the deficiency. 42 U.S.C. § 9836a(d).
>
> All but three of the regulations cited in plaintiff's Second Amended Complaint were promulgated pursuant to the Head Start Act. See 45 C.F.R. § 1304.1. There is no provision in the Head Start Act, however, permitting a private citizen to enforce its provisions. Based on the alternative specific remedies mentioned above, Congress' intent is clear. The remedy for substandard performance by a Head Start program is an enforcement action by the Secretary of the Department of Health and Human Services, not by private litigants. For these reasons, the Court dismisses with prejudice plaintiff's claims alleging violations of statutory and regulatory provisions relating to the Head Start Act, for failure to state a claim upon which relief can be granted.[48]

We find *Hodder* and *Johnson* to be persuasive and similarly conclude, on the basis of the text and structure of the Head Start Act, that no private cause of action exists to enforce § 9839(a).

The act, of course, does not expressly provide for a private cause of action to enforce the disclosure requirement of § 9839(a). Thus, the question becomes

---

[48] *Johnson, supra* at 336-337.

30

whether the text of the act demonstrates an *implicit* intent to provide for a private cause of action.

Again, the stated purpose of the act is to promote school readiness by providing services to low-income children and their families. 42 USC 9831. The act does not contemplate any benefit to private corporations such as plaintiff; nor does it indicate any intent that such a private corporation may sue to enforce its provisions. Where the intended beneficiaries are specifically identified, we are loath to create a private means of seeking redress under the act for nonbeneficiaries.

More important, the act contains a comprehensive mechanism for ensuring agency compliance with its provisions. We agree with the *Johnson* court that, far from demonstrating an intent to allow for a private cause of action, the act indicates that the *sole* remedy for a violation of § 9839(a) is an enforcement proceeding by the secretary of the HHS and the possible termination of Head Start agency status. See 42 USC 9836a.

In light of this clear indication of congressional intent, we are precluded from venturing beyond the bounds of the statutory text to divine support for the creation of a private claim to enforce § 9839(a). To do so would be to substitute our own judgment for that of Congress and

thus to usurp legislative authority, something that we of course decline to do.[49]

## IV. CONCLUSION

Because the Head Start Act does not provide for a private cause of action to enforce the disclosure requirement of § 9839(a), plaintiff has failed to state a cognizable claim. Accordingly, we reverse the judgment of the Court of Appeals and enter judgment in favor of defendant.

> Robert P. Young, Jr.
> Clifford W. Taylor
> Maura D. Corrigan
> Stephen J. Markman

---

[49] Again, contrary to the assertions of our dissenting colleagues, we do not miss any "important distinction" between the statutes at issue in *Touche Ross & Co* and *Alexander* and the statute at issue in this case, and this case does not represent the "opposite situation" of the situations present in those cases. *Post* at 6. Rather, just as the provisions at issue in *Touche Ross & Co* and *Alexander*, 42 USC 9839(a) "call[s] for oversight by governmental agencies." *Post* at 6. Moreover, we wholly disagree with the dissent's contention that § 9839(a) "specifically confers an individual right on members of the public to conduct inspections of books and records." *Post* at 6. Rather, § 9839(a) imposes on Head Start agencies a disclosure requirement, and 42 USC 9836a explicitly provides a remedy for a violation of that requirement: corrective action to be initiated by the secretary.

# STATE OF MICHIGAN

## SUPREME COURT

THE OFFICE PLANNING GROUP, INC.,

    Plaintiff-Appellee,

v                                        No. 125448

BARAGA-HOUGHTON-KEWEENAW
CHILD DEVELOPMENT BOARD, INC.,

    Defendant-Appellant.

_____

**WEAVER, J.** *(concurring in part and dissenting in part).*

I concur in the majority opinion to the extent it holds that the state courts have concurrent jurisdiction in this matter.

I dissent from the majority holding that 42 USC 9839(a) of the federal Head Start Act does not permit plaintiff to seek disclosure of information relevant to the defendant's decision on competing bids for a contract. 42 USC 9839(a) provides, in pertinent part:

> Each [Head Start] agency shall also provide for reasonable public access to information, including public hearings at the request of appropriate community groups and reasonable public access to books and records of the agency or other agencies engaged in program activities or operations involving the use of authority or funds for which it is responsible.

For the reasons stated in Justice Kelly's dissent, I would hold that this statutory language does provide

plaintiff a right to seek "reasonable" disclosure of records pertaining to contract bids submitted to a Head Start agency.

I write separately to elaborate on the majority's misreading of the effect of *Alexander v Sandoval*[1] on *Cort v Ash*.[2] Specifically, the majority is wrong to suggest that *Alexander* "appears to have abandoned the *Cort* inquiry altogether in favor of a completely textual analysis in determining whether a private remedy exists under a particular statute." *Ante* at 26.

*Cort* identified four factors relevant to determining whether a federal statute implied a private remedy where the statute did not expressly provide one. *Cort* held:

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be

---

[1] 532 US 275; 121 S Ct 1511; 149 L Ed 2d 517 (2001).

[2] 422 US 66; 95 S Ct 2080; 45 L Ed 2d 26 (1975).

2

inappropriate to infer a cause of action based solely on federal law?[3]

Unlike *Cort's* focus on whether a cause of action can be inferred from a statute, *Alexander* involved a distinct issue: whether a private cause of action could be inferred from a regulation that forbids conduct beyond that which was forbidden by the statute under which the regulation was promulgated.[4]

Because the conduct at issue in *Alexander* was prohibited by a regulation, but not by the statute pursuant to which the regulation was adopted, *Alexander* held that a cause of action alleging conduct in violation of the

---

[3] *Cort, supra* at 78.

[4] *Alexander* involved an interpretation of Title VI of the Civil Rights Act of 1964, which provides in § 601 that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI. 42 USC 2000d. Section 602 of the statute authorizes federal agencies to implement the provisions in § 601 by regulations.

The Department of Justice adopted regulations pursuant to § 602 that forbid funding recipients from adopting policies that created a disparate impact on individuals because of their race, color, or national origin. See 28 CFR 42.104(b)(2) (1999). Claiming that an English-only policy caused such disparate impacts, the plaintiffs in *Alexander* sued to enjoin the policy. While the *Alexander* Court assumed that the regulations were valid, the Court held that there was no private cause of action as a result of the policy because § 601 did not prohibit disparate impacts.

regulation could not be inferred from the statute. Given this situation, it was unnecessary for *Alexander* to delve deeply into the *Cort* factors to resolve whether a cause of action could be inferred from the statute.

Though the majority may prefer that *Cort's* factors be abandoned and a "completely textual" approach be adopted, neither logic nor federal precedent supports its preference. First, it is absurd to advocate a "completely textual approach" where the need to examine whether a cause of action may be inferred from a statute is engendered by the *lack* of an expressly stated cause of action in the text of the statute. Further, the majority makes no attempt to explain how its "completely textual" approach differs from the *Cort* factors.

Second, while the majority correctly notes that not every federal case involving whether a private cause of action may be inferred from a statute has applied all the four *Cort* factors, it is an overstatement to suggest that the federal courts have "abandoned the *Cort* inquiry altogether." Even federal cases relied on by the majority employ a *Cort*-based analysis. For example in *Hodder v Schoharie Co Child Dev Council, Inc,* 1995 US Dist LEXIS 19049, *10 (ND NY, 1995), the court premised its analysis as follows:

4

The Court may infer a private right of action from a federal statute that does not expressly create one only if the statute's language, structure, and legislative history reveal Congress' intent to create a private right of action. See *Thompson v. Thompson*, 484 U.S. 174, 179, 98 L. Ed. 2d 512, 108 S. Ct. 513 (1988)*; Touche Ross & Co. v. Redington*, 442 U.S. 560, 61 L. Ed. 2d 82, 99 S. Ct. 2479 (1979); *Cort v. Ash*, 422 U.S. 66, 45 L. Ed. 2d 26, 95 S. Ct. 2080 (1975). Courts normally try to divine Congressional intent by applying the four Cort factors: 1) whether plaintiffs belong to the class for whose special benefit Congress passed the statute; 2) whether the indicia of legislative intent reveal a congressional purpose to provide a private cause of action; 3) whether implying a private cause of action is consistent with the underlying purposes of the legislative scheme; and 4) whether the plaintiff's cause of action concerns a subject that is traditionally relegated to state law. *Merrell Dow* [*Pharmaceuticals Inc v Thompson*]*, 478 U.S. [804, 810-811; 106 S Ct 3229; 92 L Ed 2d 650 (1986)]; Cort*, 422 U.S. at 78.

*Hodder* applied each factor from *Cort* to the provision of the Head Start Act at issue in that case.

That the majority misunderstands *Alexander's* effect is underscored by a recent United States Supreme Court decision, *Jackson v Birmingham Bd of Ed,* ___ US ___, ___; 125 S Ct 1497, 1506; 161 L Ed 2d 361, 373 (2005), where the Court emphasized that *Alexander's* holding is simply premised on the fact that the regulations at issue in *Alexander* extended protection beyond the limits of the statute at issue in *Alexander*. Describing the holding of *Alexander, Jackson* stated:

5

[In *Alexander*] we rejected the contention that the private right of action to enforce intentional violations of Title VI encompassed suits to enforce the disparate-impact regulations. We did so because "it is clear . . . that the disparate-impact regulations do not simply apply § 601 -- since they indeed forbid conduct that § 601 permits -- and therefore clear that the private right of action to enforce § 601 does not include a private right to enforce these regulations." [*Alexander*] at 285, 149 L. Ed. 2d 517, 121 S. Ct. 1511. See also *Central Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164, 173, 128 L. Ed. 2d 119, 114 S. Ct. 1439 (1994) (A "private plaintiff may not bring a [suit based on a regulation] against a defendant for acts not prohibited by the text of [the statute]").

In this case we must necessarily look beyond the text of the statute at issue to discern whether Congress intended that a private person be able to seek disclosure of documents from a Head Start agency. The text of the statute at issue in this case, 42 USC 9839(a), does not expressly create a private cause of action to enforce its provision regarding public access to information. Thus, it is necessary to look beyond the text to determine whether Congress intended to create a private cause of action. As recognized in *California v Sierra Club,* 451 US 287, 293; 101 S Ct 1775; 68 L Ed 2d 101 (1981), the four *Cort* factors

present the relevant inquiries to pursue in answering the recurring question of implied causes of action. Cases subsequent to *Cort* have explained that the ultimate issue is whether Congress intended to create a private right of action . . . but the four factors specified in

6

*Cort* remain the "criteria through which this intent could be discerned." [Citations omitted.]

Given the task at hand and the federal precedent by which we are bound, it is absurd to suggest that we must employ a "completely textual" approach. Any inquiry into whether a private cause of action may be inferred requires consideration of the intent of Congress and *Cort* is our guide. Regardless of the majority's apparent discomfort with *Cort's* factors and inferred causes of action, we are bound by federal law and five votes have not combined in any one case in the United States Supreme Court to declare *Cort* a dead letter.[5]

Elizabeth A. Weaver

---

[5] In *Thompson v Thompson*, 484 US 174; 108 S Ct 513; 98 L Ed 2d 512 (1988), Justice Scalia (concurring in the judgment) expressed his vigorous disagreement with whether the Court should reaffirm *Cort* and whether it was appropriate to infer private causes of action from federal statutes that do not expressly provide them. Justice Scalia's view of *Cort* and inferred causes of action has not yet garnered the requisite five votes.

STATE OF MICHIGAN

SUPREME COURT

THE OFFICE PLANNING GROUP, INC.,

    Plaintiff-Appellee,

v                                No. 125448

BARAGA-HOUGHTON-KEWEENAW
CHILD DEVELOPMENT BOARD, INC.,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

I agree with the majority that our state courts have jurisdiction over plaintiff's claim under the federal Head Start Act, 42 USC 9831 *et seq*. However, I disagree with its conclusion that the act, at 42 USC 9839(a), does not provide a private cause of action. The statutory language, the focus of the legislation, its history, and its purpose imply a congressional intent to allow private actions. Therefore, I would find such a right and affirm the decision of the Court of Appeals.

Defendant's Various Jurisdictional Challenges

Defendant raises a variety of jurisdictional arguments on appeal. It claims that primary jurisdiction must rest with the Department of Health and Human Services (HHS) because, otherwise, an "imbalance" would be created in the

administration of the Head Start Act. This Court explained the doctrine of primary jurisdiction in *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185; 631 NW2d 733 (2001). It is based on the principle of separation of powers and is concerned with the respect appropriately shown to an agency's decisions made in the performance of regulatory duties. *Id*. at 196-197.

The primary jurisdiction doctrine underscores the notion that administrative agencies possess specialized and expert knowledge to address the matters they regulate. *Id*. at 198. The question of primary jurisdiction arises only with respect to matters that Congress has assigned to a governmental agency or administrative body. *Attorney General v Diamond Mortgage Co,* 414 Mich 603, 613; 327 NW2d 805 (1982). This case does not concern such matters.

Moreover, resolution of this case does not require specialized knowledge. Instead, it involves a straight-forward question of statutory interpretation. This Court is well equipped to handle such questions because they do not require specialized or expert knowledge outside the scope of our general jurisdiction. Therefore, the primary jurisdiction doctrine simply does not apply to this case. *Id.; Travelers, supra* at 198-199.

Defendant complains that, under the *Chevron*[1] doctrine, the meaning that HHS has given to "reasonable public access" in various letters interpreting 42 USC 9839(a) should be definitive. *Chevron* directs that considerable weight be accorded an agency's construction of a statutory scheme. *Chevron, supra* at 844. But this applies only when the decision involves reconciling conflicting policies and requires more than ordinary knowledge of matters that the agency regulates. *Id*.

This case does not demand a detailed knowledge of the subject matter of the Head Start Act. Nor does it concern a complicated matter of interagency interaction or policy. It does not require detailed knowledge of the workings of the Head Start Act. Rather, it involves an issue of statutory construction. No special expertise being required, the *Chevron* doctrine does not apply. *Id*.

Defendant also argues that we lack jurisdiction because plaintiff failed to exhaust all its administrative remedies. But the United States Supreme Court has ruled that "where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v Madigan*, 503 US 140, 144; 112 S Ct 1081; 117 L Ed 2d 291 (1992). 42

---

[1] *Chevron USA Inc v Natural Resources Defense Council, Inc*, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984).

USC 9839(a) contains no exhaustion requirements and is silent regarding administrative remedies. Therefore, it is within our sound discretion to hear this case.

Given that none of the theories that defendant relies on to challenge this Court's jurisdiction applies here, it is appropriate for us to reach the merits of the case. And it is appropriate for us to decide whether Congress intended a private right of action in 42 USC 9839(a).

### Whether a Private Cause of Action Exists Requires a Determination of Legislative Intent

Congress can create a private right of action in two ways. It can expressly provide for the right or it can imply it. *Cannon v Univ of Chicago*, 441 US 677, 717; 99 S Ct 1946; 60 L Ed 2d 560 (1979). Frequently, legislation does not clearly express whether a private right was intended. The growing volume of litigation and the complexity of federal legislation increase the need for careful scrutiny to ensure what Congress wanted. *Merrill Lynch, Pierce, Fenner & Smith, Inc v Curran*, 456 US 353, 377; 102 S Ct 1825; 72 L Ed 2d 182 (1982).

To assist us in undertaking that scrutiny, the United States Supreme Court articulated a four-part test thirty years ago in *Cort v Ash*, 422 US 66; 95 S Ct 2080; 45 L Ed 2d 26 (1975). A court makes four inquiries: (1) whether the plaintiff is a member of the class for whose benefit

4

the legislative body enacted the statute, (2) whether there is any indication that the legislative body intended to create or deny such a right of action, (3) whether inferring the right of action is consistent with the underlying scheme of the legislation, and (4) whether the cause of action is one traditionally relegated to state law so that it would be inappropriate to base the determination solely on federal law. *Id.* at 78. The key to this inquiry is determining the legislative intent in enacting the statute. *Merrill Lynch*, *supra* at 377-378.

In *Touche Ross & Co v Redington*,[2] the Court opined that the first three factors of *Cort* should be given greater weight than the fourth. The opinion states:

> Indeed, the first three factors discussed in *Cort*—the language and focus of the statute, its legislative history, and its purpose, see 422 U.S., at 78—are ones traditionally relied upon in determining legislative intent. [*Id.* at 575-576.]

The language of the statute in question in *Touche Ross*[3] did not explicitly create a private remedy. Also, the legislative history gave no indication that Congress intended one. The statute neither conferred rights on private parties nor proscribed conduct as unlawful. *Touche*

---

[2] 442 US 560; 99 S Ct 2479; 61 L Ed 2d 82 (1979).

[3] 15 USC 78q(a).

5

*Ross, supra* at 569.  It required that brokers keep certain documents for government inspection and focused on governmental rights of inspection.  *Id.* at 569-570. Because the statute did not imply a private right of action, the Court found that none existed.  *Id.* at 571.

The majority contends that, twenty-two years after *Touche Ross*, the United States Supreme Court abandoned the *Cort* analysis and switched to a completely textual analysis in *Alexander v Sandoval*, 532 US 275; 121 S Ct 1511; 149 L Ed 2d 517 (2001).  I disagree.  In *Alexander*, the Court followed the same reasoning as in *Touche Ross* and focused on the initial *Cort* factors.

As in *Touche Ross*, the *Alexander* Court stated that, to determine legislative intent, it was important to start with the language of the statute.  *Id*. at 287-288.  In that case, it needed to go no further in its inquiry.  *Id*. at 288.  The reason was that, as in *Touche Ross*, the statute under consideration[4] indicated that Congress intended not to create a private cause of action.  *Alexander, supra* at 288-289.

That statute neither conferred rights on private parties nor proscribed conduct as unlawful.  Instead, it empowered governmental agencies to enforce regulations.

_____

[4] 42 USC 2000d-1.

6

*Id*. at 289. The Court concluded that, by expressly providing one method of enforcement, Congress signaled that it intended to preclude other methods.[5] *Id*. at 290.

Contrary to the majority's conclusion, a full reading of *Alexander* indicates that the Court did not abandon *Cort*. Instead, *Alexander* stated that the analysis in that case need not extend beyond the first two *Cort* factors because the statute indicated that Congress did not intend a private cause of action. The *Cort* factors remain a valid and important means of discerning legislative intent. The *Alexander* decision provides no basis to conclude the contrary.

### Specific Analysis of 42 USC 9839

Despite espousing a textualist approach, the majority never deals with the actual language of 42 USC 9839(a). Instead, it focuses on tangentially related federal

---

[5] The majority points out that 42 USC 9839(a) contains language like the statutory language that the Supreme Court analyzed in *Alexander*. *Ante* at 27 n 46. But the majority again misses the point. Unlike 42 USC 2000d-1, it contains a directive that does not concern the mere internal creation of rules. 42 USC 9839(a) contains language that is absent in 42 USC 2000d-1 (the statutory language analyzed in *Alexander*). 42 USC 9839(a) specifically mentions the "public" and "appropriate community groups . . . ." It allows the public and these groups to request public hearings and to seek access to books and records. 42 USC 9839(a).

7

district court cases and the overall purpose of the Head Start Act.

Let us review the actual language in question. 42 USC 9839(a) provides in part:

> Each Head Start agency shall observe standards of organization, management, and administration which will assure, so far as reasonably possible, that all program activities are conducted in a manner consistent with the purposes of this subchapter [42 USC 9831 *et seq.*] and the objective of providing assistance effectively, efficiently, and free of any taint of partisan political bias or personal or family favoritism. Each such agency shall establish or adopt rules to carry out this section, which shall include rules to assure full staff accountability in matters governed by law, regulations, or agency policy. *Each agency shall also provide for reasonable public access to information, including public hearings at the request of appropriate community groups and reasonable public access to books and records of the agency* or other agencies engaged in program activities or operations involving the use of authority or funds for which it is responsible. Each such agency shall adopt for itself and other agencies using funds or exercising authority for which it is responsible, rules designed to . . . (3) guard against personal or financial conflicts of interest . . . . [Emphasis added.]

This language indicates the intent of Congress to maintain open accountability in the use of Head Start funds. It explicitly provides a right of public access. After stating that "[e]ach agency shall also provide for reasonable public access to information," it spells out particulars on how to meet this requirement, including holding public meetings.

8

The statute specifically confers an individual right on members of the public to conduct inspections of books and records. The opposite situation existed in both *Touche Ross* and *Alexander,* where the statutes lacked language creating such a right. They offered neither the general public nor any private individual access to anything. The oversight they called for was by governmental agencies. *Alexander*, *supra* at 288-289; *Touche Ross*, *supra* at 569-570. The majority simply misses this important distinction.[6]

It relies on two federal district court cases, *Johnson v Quin Rivers Agency for Community Action, Inc*, 128 F Supp 2d 332 (ED Va, 2001), and *Hodder v Schoharie Co Child Dev Council, Inc*, 1995 US Dist LEXIS 19049 (ND NY, 1995). But *Johnson* and *Hodder* do not support the conclusion that no private cause of action exists and they are inapplicable to the case at hand.

---

[6] The majority states that it "wholly disagree[s]" with the conclusion that 42 USC 9839(a) confers an individual right on a member of the public. It contends that 42 USC 9839(a) merely creates a disclosure requirement. *Ante* at 33 n 49. Again, the majority fails to analyze the actual language of the statute. 42 USC 9839(a) mandates public access, such as public hearings, at the request of "appropriate community groups . . . ." Only by allowing enforcement of this public inspection and access requirement can we effectuate Congress's specific goal of maintaining open accountability in the use of public funds. The majority simply ignores this clear congressional intent.

Neither dealt with 42 USC 9839(a). *Johnson* concerned claims of discrimination and substandard enforcement of Head Start regulations. *Johnson*, *supra* at 335. The Head Start provisions in question were 42 USC 9836a(a)(1) and (2). *Johnson, supra* at 336-337.

*Hodder* concerned claims of employees terminated from Head Start agencies. *Hodder*, *supra* at *16. It dealt with 42 USC 9849(b). *Hodder, supra* at *12. 42 USC 9839(a) was mentioned only in passing.

The only thing *Hodder* and *Johnson* have in common with this case is that both involve provisions of the Head Start Act. But the statutory language scrutinized in *Hodder* and *Johnson* makes no mention of public access as 42 USC 9839(a) does. Given that *Hodder* and *Johnson* do not deal with 42 USC 9839(a), they are of no assistance in our resolution of this case.

The majority also bases its decision on the general purpose of the Head Start Act. It assumes that the only purpose worth considering is the act's overarching goal of providing services to low-income children and their families. It ignores the congressional intent specifically written into 42 USC 9839(a).

42 USC 9839(a) specifies Congress's goal of maintaining open accountability in the use of public funds and effectuates it by providing a right of public access to

books and records. By ignoring these specific provisions, the majority has effectively substituted its judgment for that of Congress. In reducing public oversight, it frustrates the paramount goals of the Head Start Act by facilitating the misuse of federal funds.

Application of the *Cort* factors to 42 USC 9839(a)

Given that the language of the statute does not contradict the existence of a private cause of action, it is appropriate to apply all the *Cort* factors. The first question is whether plaintiff is in the class for whose benefit Congress enacted 42 USC 9839(a). The statute indicates that Congress intended to grant access to the public at large. Plaintiff is a member of the public. Therefore, plaintiff is within the appropriate class. *Cort*, *supra* at 79.

The second question, whether there is any indication that Congress intended to create or to deny a private right of action, has already been discussed. The language of 42 USC 9839(a) indicates a specific intent to create such an action. There is no legislative history or other material contradicting this intent.

The third question is whether it is consistent with the underlying legislative scheme to infer a private right of action. *Cort, supra* at 78. As the majority states, the overall purpose of the Head Start Act is to promote school

readiness.  42 USC 9831.  As part of its plan to reach this goal, Congress expressed an intent to maintain open accountability in the use of public funds in 42 USC 9839(a).  In the same section, to effectuate this intent, Congress provided the public with a right of access to books and records.  Inferring a right of action to implement this right enforces that intent.  Therefore, inferring a right of action is consistent with the legislative scheme.

Finally, there is no indication that this is a cause of action traditionally relegated to state law.  And defendant makes no such argument.  To the contrary, an action pursuant to 42 USC 9839(a) is the only means by which plaintiff could obtain the information it seeks.  Therefore, the analysis of this factor, as with the other *Cort* factors, points to the need to recognize a private right of action under 42 USC 9839(a).

Where a Legal Right Exists, so Does a Legal Remedy

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws . . . ."  *Marbury v Madison*, 5 US (1 Cranch) 137, 163; 2 L Ed 60 (1803).  One of the fundamental tenets of the American legal system is that, where there is a legal right, there is also a legal remedy.  *Id*.  After it is determined that Congress intended a right of action, courts

12

presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise. *Franklin v Gwinnett Co Pub Schools*, 503 US 60, 66; 112 S Ct 1028; 117 L Ed 2d 208 (1992).

In this case, a private right of action exists under 42 USC 9839(a). Plaintiff sought the appropriate remedy of viewing the records of the bids submitted for office supplies and furniture. Defendant makes no persuasive argument that viewing this information would be unreasonable. This proposed remedy is specifically consistent with the language of 42 USC 9839(a), which allows for reasonable inspections of books and records. Therefore, Congress has not expressly indicated that this remedy is inappropriate. And the trial court did not err in granting it.

I would affirm the decision of the Court of Appeals.

Marilyn Kelly
Michael F. Cavanagh

13