YOUNG, J.
Plaintiff is a disappointed bidder that seeks disclosure from defendant of bid documents under 42 USC 9839(a), a provision of the federal Head Start Act[1] *482 that requires Head Start agencies to provide for “reasonable public access” to information. Defendant Head Start agency contends that the act does not create a private cause of action to enforce its provisions. We hold that the Head Start Act does not contemplate a private cause of action seeking disclosure of the contested bid documents under § 9839(a). Accordingly, we reverse the judgment of the Court of Appeals and enter judgment in favor of defendant.
I. FACTS AND PROCEDURAL HISTORY
Defendant, Baraga-Houghton-Keweenaw Child Development Board, Inc., is a private, nonprofit organization that is designated as a Head Start[2] agency under 42 USC 9836(a).[3] Defendant operates Head Start programs in Baraga, Houghton, and Keweenaw counties. In January 2001, defendant solicited bids for office supplies and furniture. Plaintiff, a private, for-profit corporation, submitted a bid. Defendant conducted an open meeting at which its building committee reviewed the bids and made a recommendation to its board of directors. Defendant accepted the lowest bid at the open meeting. Rodney Liimatainen, defendant’s executive director, *483 notified plaintiffs branch manager, Jack Hamm, that plaintiffs bid had exceededthe lowest bid by $10,000.
Hamm, suspicious that the lower bidders had offered lesser-quality merchandise, requested copies of all the bids submitted. Liimatainen informed Hamm that the details of the bids were unavailable for inspection by the public because the other bidders did not want the information disseminated. Liimatainen acknowledged, however, that there might be small discrepancies in quality, manufacturer, and type of product among the bids submitted. In an attempt to compel defendant to disclose copies of the bids, Hamm then submitted written requests to defendant under the Michigan Freedom of Information Act (FOIA).[4] Defendant refused the requests on the basis that it was a private corporation that was not subject to the FOIA. Plaintiff also requested copies of the submitted bids from the Department of Health and Human Services (HHS), the federal agency responsible for administering the Head Start Act.
In April 2001, plaintiff filed an action under the FOIA[5] demanding a complete copy of each bid. Plaintiff later filed an amended complaint alleging that it was additionally entitled to disclosure of the bid information under unspecified “federal legislation which requires disclosure of information by parties supplying service under the so-called Head Start Program.” In subsequent motion papers, plaintiff indicated that the federal legislation on which it relied was 42 USC 9839(a), which provides, in relevant part:
*484 Each [Head Start] agency shall also provide for reasonable public access to information, including public hearings at the request of appropriate community groups and reasonable public access to books and records of the agency or other agencies engaged in program activities or operations involving the use of authority or funds for which it is responsible.
After the commencement of the litigation, various HHS officials issued memoranda indicating that defendant was not required under the FOIA or the Head Start Act to provide plaintiff with access to the bid information. In a letter to defendant, a program officer in the Chicago regional office of the HHS advised defendant that Head Start grantees are not subject to the FOIA provisions. The program officer further noted that, under § 9839(a) and its corresponding HHS regulation, 45 CFR 1301.30,[6] defendant was not required to disclose specific information regarding the selection of a supplier; rather, it was required only to disclose general information such as copies of its written procurement procedures.
Similarly, in a letter to plaintiffs counsel, the director of the HHS Office of Public Affairs, FOI/Privacy Acts Division, stated that the FOIA did not apply to defendant; however, the director noted that defendant had provided plaintiff with a copy of the policy it followed in conducting its procurement activities and with background documents addressing its source of funding.
*485 The director also wrote a letter advising defense counsel that defendant was not subject to the requirements of the federal Freedom of Information Act.[7] The director further advised counsel that defendant was bound by any provisions incorporated into the grant language regarding its obligations to make information concerning its activities available to the public, but that defendant had already complied with those requirements.
Finally, in a letter written to Congressman Bart Stupak, who had apparently come to plaintiffs aid in seeking the bid documents, the director of the HHS Office of Family and Child Development stated that defendant had reasonably complied with the requirements of § 9839 and 45 CFR 1301.30 by providing plaintiff with a copy of its procurement procedures, and that defendant was under no further obligation to provide documents with specific commercial information it received through the competitive bid process.
Citing these HHS memoranda, defendant moved for summary disposition, arguing that it was not subject to the Michigan FOIA or the federal FOIA and that defendant had exceeded any obligation it had to supply plaintiff with information under 42 USC 9839(a).
The trial court granted defendant’s motion for summary disposition to the extent that plaintiff sought relief under the Michigan FOIA and the federal FOIA.[8] The court, however, sua sponte granted summary disposition in favor of plaintiff under MCR 2.116(I)(2) on the ground that the requested information was subject to disclosure under § 9839(a). The court, observing that § 9839(a) required that a Head Start agency grant *486 “reasonable public access” to its books and records, opined that
[a] demand that information be provided outside of working hours would not be reasonable. A demand that an agency exhaustively search for something that the requesting party cannot properly identify would not be reasonable. As recognized by the Michigan Freedom of Information Act, it would likely not be reasonable to expect an agency to create a record, such as a compilation or summary, when no such record exists. And it may well not be reasonable to demand that an employee’s personnel file or disciplinary record be disclosed.
In the present situation, a denial by the Plaintiff [sic] of a written request to review specified, existing and readily accessible written bids is certainly not compliant with a requirement of providing reasonable public access. That would be true regardless of who made the request, but the case is even more compelling when the requesting party has a genuine, identifiable reason for the information sought, as did the Plaintiff.
In summary, Defendant’s denial of Plaintiffs request to review and obtain copies of the bids in question was in violation of the Federal requirement that Plaintiff [sic] provide for reasonable public access to information, including reasonable public access to books and records of the agency, involving the use of funds for which the Plaintiff [sic] is responsible.
The Court of Appeals affirmed.[9] Noting that the state courts shared concurrent jurisdiction to decide a case involving the Head Start Act because the act did not provide for exclusive federal jurisdiction,[10] the panel rejected the reasoning of federal case law holding that the Head Start Act does not provide a private cause of *487 action.[11] The panel, citing Long v Chelsea Community Hosp, 219 Mich App 578; 557 NW2d 157 (1996), and Forster v Delton School Dist, 176 Mich App 582, 585; 440 NW2d 421 (1989), held that a private cause of action could be inferred under § 9839(a) because the statute did not provide adequate means to enforce its provisions:
The statute in question, 42 USC 9839(a), requires Head Start agencies to provide reasonable public access to their books and records, but it does not provide any means of enforcing this specific provision. Although the Head Start Act requires agencies to open their books and records to the department secretary or the United States Comptroller General for audit and examination, 42 USC 9842, Congress specifically provided for public access to the books and records, not simply to the audits prepared by these other entities. Therefore, we conclude an implied private cause of action exists.[12]
The panel concluded that the trial court did not err in granting summary disposition for plaintiff because defendant had not complied with the “reasonable public access” requirement of § 9839(a). The panel, noting that defendant had failed to suggest why it would be unreasonable to disclose the requested information, held that because the information was readily available and could be produced on short notice, it was covered by the statutory directive to provide “reasonable public access.”[13] The panel rejected defendant’s contention that the bidders did not have notice that the bids would be disclosed, stating that the statute itself provided that notice; the panel also rejected defendant’s argument *488 that public policy dictated against interpreting the statute to require disclosure of the bids.[14] Finally, the panel held that it was not required to defer to the interpretation of § 9839(a) set forth in the letters written by HHS officials, opining that only a ruling from the “upper echelon” of the HHS would be entitled to deference and that, in any event, the officials’ interpretation was clearly wrong.[15]
We granted defendant’s application for leave to appeal.[16] Because we conclude that § 9839(a) does not provide for a private cause of action, we reverse the judgment of the Court of Appeals and enter judgment in favor of defendant.
II. STANDARD OF REVIEW
This case presents issues of statutory construction and other questions of law. Such questions are subject to review de novo by this Court.[17] Similarly, we review a trial court’s grant of summary disposition de novo.[18]
III. ANALYSIS
A. INTRODUCTION
The Head Start Act was enacted for the purpose of “promoting] school readiness by enhancing the social and cognitive development of low-income children through the provision, to low-income children and their *489 families, of health, educational, nutritional, social, and other services that are determined, based on family needs assessments, to be necessary.”[19] The secretary of the HHS is authorized under 42 USC 9836(a) to designate as a Head Start agency “any local public or private nonprofit or for-profit agency.. . .” The act further authorizes the secretary to provide financial assistance or grants to Head Start agencies for the operation of Head Start programs.[20]
Under 42 USC 9836a, the secretary is directed to establish by regulation standards applicable to Head Start agencies, including performance standards, administrative and financial management standards, and standards relating to the conditions and location of agency facilities. The secretary has promulgated regulations implementing these statutory directives.[21] The secretary is directed under 42 USC 9836a(c) and (d) to monitor Head Start agencies for compliance with statutory and regulatory standards and to take corrective action if necessary. If an agency does not comply with such standards, the secretary may initiate proceedings to terminate the designation of the agency unless the agency corrects the deficiency.[22]
At issue in this case is § 9839(a) of the act, which provides as follows:
Each Head Start agency shall observe standards of organization, management, and administration which will assure, so far as reasonably possible, that all program activities are conducted in a manner consistent with the *490 purposes of this subchapter [42 USC 9831 et seq.\ and the objective of providing assistance effectively, efficiently, and free of any taint of partisan political bias or personal or family favoritism. Each such agency shall establish or adopt rules to carry out this section, which shall include rules to assure full staff accountability in matters governed by law, regulations, or agency policy. Each agency shall also provide for reasonable public access to information, including public hearings at the request of appropriate community groups and reasonable public access to books and records of the agency or other agencies engaged in program activities or operations involving the use of authority or funds for which it is responsible. Each such agency shall adopt for itself and other agencies using funds or exercising authority for which it is responsible, rules designed to (1) establish specific standards governing salaries, salary increases, travel and per diem allowances, and other employee benefits; (2) assure that only persons capable of discharging their duties with competence and integrity are employed and that employees are promoted or advanced under impartial procedures calculated to improve agency performance and effectiveness; (3) guard against personal or financial conflicts of interest; and (4) define employee duties in an appropriate manner which will in any case preclude employees from participating, in connection with the performance of their duties, in any form of picketing, protest, or other direct action which is in violation of law. [Emphasis supplied.]
Similarly, Head Start regulation 45 CFR 1301.30 provides that “[e]ach agency shall also provide reasonable public access to information and to the agency’s records pertaining to the Head Start program.”
The lower courts concluded that defendant was required under the “reasonable public access” provision of § 9839(a) to disclose copies of all bids it received in connection with its January 2001 solicitation of bids for office supplies and furniture. In considering the propriety of the lower courts’ rulings, we must first determine *491 whether the trial court properly exercised jurisdiction over plaintiffs claim under § 9839(a). Next, we must examine whether § 9839(a) allows for plaintiffs private cause of action to enforce the disclosure provision. Although we conclude that the state courts have jurisdiction over this action, we hold that § 9839(a) does not provide for a private cause of action.
B. CONCURRENT JURISDICTION
Defendant first argues that the state courts lack jurisdiction over plaintiffs claim under the federal Head Start Act.[23] We disagree and hold that the state courts have concurrent jurisdiction with the federal *492 courts to entertain plaintiffs action seeking relief under § 9839(a).
*493 It has long been established that, so long as Congress has not provided for exclusive federal-court jurisdiction, state courts may exercise subject-matter jurisdiction over federal-law claims “ ‘whenever, by their own constitution, they are competent to take it.’ ”[24] State courts possess sovereignty concurrent with that of the federal government, “subject only to limitations imposed by the Supremacy Clause.”[25] Thus, state courts are presumptively competent to assume jurisdiction over a cause of action arising under federal law.[26] If concurrent jurisdiction otherwise exists, subject-matter jurisdiction over a federal-law claim is governed by state law.[27]
In determining whether our state courts enjoy concurrent jurisdiction over a claim brought under federal law, it is necessary to determine whether Congress intended to limit jurisdiction to the federal courts.
“In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction. Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication *494 from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests.”[28]
Defendant does not present a coherent argument that the courts of this state lack jurisdiction over the parties’ dispute concerning the disclosure of documents under § 9839(a). Rather, defendant simply contends that the “expansive regulatory scheme” of the Head Start Act “evidences Congressional intent that the HHS exercise its sole discretion over its administration of local Head-Start agencies through its regulations.” Defendant has conflated the vesting of discretion in federal agencies with the vesting of jurisdiction in the federal courts: That a particular agency has discretion to administer a federal statute and to implement regulations for the enforcement of the statute does not address whether state courts have concurrent jurisdiction over a dispute arising under that statute. Instead, our inquiry is limited to whether Congress intended to limit to federal courts exclusive jurisdiction over such a dispute and, if not, whether state law allows our courts to exercise subject-matter jurisdiction over the action.
Defendant concedes that nothing in the Head Start Act explicitly confines jurisdiction to the federal courts, and defendant does not point to any statutory indication that Congress intended that jurisdiction over a dispute under the Head Start Act should lie solely in the *495 federal courts. We have been unable to locate anything in the legislative history of the act demonstrating an intent to grant exclusive federal-court jurisdiction, and defendant has certainly failed to bring any such information to our attention. Moreover, there is no “clear incompatibility” between state-court jurisdiction and federal interests with respect to application of the Head Start Act, particularly with respect to a straightforward question of statutory construction such as the one presented in this case. Indeed, as noted in Gulf Offshore Co v Mobil Oil Corp, 453 US 473, 478 n 4; 101 S Ct 2870; 69 L Ed 2d 784 (1981), “[p]ermitting state courts to entertain federal causes of action facilitates the enforcement of federal rights.”
Congress has done nothing in the exercise of its powers under the Supremacy Clause to “affirmatively divest state courts of their presumptively concurrent jurisdiction” over claims brought under the Head Start Act.[29] Additionally, it is clear that the courts of this state have subject-matter jurisdiction over the dispute at issue, because our Constitution provides that the circuit courts of this state have original jurisdiction “in all matters not prohibited by law... .”[30] Accordingly, we hold that the courts of this state have properly exercised concurrent jurisdiction over plaintiffs § 9839(a) claim.
C. PRIVATE CAUSE OF ACTION TO ENFORCE § 9839(a)
Defendant next contends that plaintiffs claim fails because § 9839(a) does not provide for a private cause of action to enforce the public access requirement. We agree.
*496 1. WHETHER A CAUSE OF ACTION EXISTS IS SOLELY A MATTER OF STATUTORY CONSTRUCTION
“ ‘[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.’ ”[31] Rather, “[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress.”[32] Thus, in determining whether plaintiff may bring a private cause of action to enforce the public access requirement of § 9839(a), we must determine whether Congress intended to create such a cause of action.[33] Because the Head Start Act does not evidence an intent to create a private remedy for an alleged violation of § 9839(a), plaintiffs action must be dismissed.
Although the United States Supreme Court in the last century embraced a short-lived willingness to create remedies to enforce private rights,[34] the Court *497 “abandoned” that approach to statutory remedies in Cort v Ash[35] and “[has] not returned to it since.”[36] In Cort, the Court set forth a test for determining whether a private remedy is implicit in a statute that does not expressly provide such a remedy:
First, is the plaintiff “one of the class for whose especial benefit the statute was enacted,” . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?[37]
Post-Cori, the Court has become increasingly reluctant to imply a private cause of action, preferring to focus exclusively on the second Cort element, which requires indicia of congressional intent to create a cause of action. For example, as early as Cannon v Univ of Chicago [38] although the Court applied each of the Cort factors, it characterized the determination whether a private remedy existed to enforce a statutory right as a matter of “statutory construction.”[39] In Touche Ross & *498 Co,[40] the Court declined to even address the remaining Cort factors where it was clear that Congress did not intend to create a private cause of action to enforce § 17(a) of the Securities Exchange Act of 1934:[41]
It is true that in Cort v. Ash, the Court set forth four factors that it considered “relevant” in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in Cort — the language and focus of the statute, its legislative history, and its purpose, see 422 U.S. at 78 — are ones traditionally relied upon in determining legislative intent. Here, the statute by its terms grants no private rights to any identifiable class and proscribes no conduct as unlawful. And the parties as *499 well as the Court of Appeals agree that the legislative history of the 1934 Act simply does not speak to the issue of private remedies under § 17 (a). At least in such a case as this, the inquiry ends there: The question whether Congress, either expressly or by implication, intended to create a private right of action, has been definitely answered in the negative.
Similarly, in California v Sierra Club,[42] the Court, noting that “the focus of the inquiry is on whether Congress intended to create a remedy,” concluded that consideration of the first two Cort factors was dispositive. Because there was no indication that Congress intended to create a private remedy to enforce § 10 of the Rivers and Harbors Appropriation Act of 1899,[43] the Court held that it was unnecessary to inquire further into the remaining factors, because “[t]hese factors are only of relevance if the first two factors give indication of congressional intent to create the remedy.”[44]
In Alexander, the Court appears to have abandoned the Cort inquiry altogether in favor of a completely textual analysis in determining whether a private remedy exists under a particular statute. Rather than applying the Cort factors, the Alexander Court concluded, solely on the basis of the text of 42 USC 2000d-l, that private individuals could not sue to enforce disparate-impact regulations promulgated under Title VI of the Civil Rights Act of 1964. The Court *500 rejected the plaintiffs argument that dispositive weight could be accorded to context shorn of text, holding that “legal context matters only to the extent it clarifies text.”[45] The Alexander majority additionally rejected the dissent’s claim that the position adopted “ ‘blind[ed] itself to important evidence of congressional intent,’ ” noting that the methodology employed in the majority opinion was well established in earlier decisions that explained “that the interpretive inquiry begins with the text and structure of the statute ... and ends once it has become clear that Congress did not provide a cause of action.”[46]
2. THE HEAD START ACT DOES NOT PROVIDE FOR A PRIVATE CAUSE OF ACTION
With the aforementioned principles in mind, we examine the text of the Head Start Act to determine *501 whether it provides for a private cause of action to enforce § 9839(a).
To date, two federal district courts have considered whether causes of action existed under different provisions of the Head Start Act. Although our Court of Appeals cited these cases, it rejected their analyses without explanation.
In Hodder, supra, the United States District Court for the Northern District of New York applied the Cort factors and concluded that the plaintiffs, former employees of a Head Start agency, could not bring a cause of action for wrongful discharge under the Head Start Act:
Turning to the first [Cort\ factor, plaintiffs are far-removed from the class for whose special benefit Congress enacted the Head Start Act. The purpose of this Act is to authorize the appropriation of funds for Project Head Start’s “effective delivery of comprehensive health, educational, nutritional, social and other services to economically disadvantaged children and their families.” 42 USC § 9831(a). Hence, the class for whose special benefit Congress passed the Head Start Act is the class of economically disadvantaged children and their families who need the specified services, which do not under any reasonable interpretation of the Act include employment services. Indeed, a Head Start agency would likely violate the Act if it employed the parent of [a] Head Start child. See 42 USC § 9839(a)(3). Plaintiffs’ assertion that “employees of Head Start agencies ... are members of a class which is specially addressed are protected by the Act and regulations” is legally unsupported and legally unsupportable.... Congress plainly did not enact the Head Start Act in order to benefit Head Start employees.
As to the second Cort factor, the Court has found no indication that Congress intended the Act or its interpretive regulations to create a private right of action for employees who are terminated from Head Start agencies in *502 a manner allegedly inconsistent with those rules. Plaintiffs admit that the Act lacks any explicit indication that Congress intended to create a cause of action for these employees, but argue that § 9849(b) of the Act “specifically negates any intent to deny such a cause of action.” . .. Section 9849(b) concerns the application of the Civil Rights Act to any sexual discrimination that may occur in connection with Head Start programs or activities. The last sentence states that the section “shall not be construed as affecting any other legal remedy that a person may have if such person is . .. denied employment in connection with[] any [Head Start] program, project, or activity ....”
At best, this sentence reveals a congressional unwillingness to interfere with any of the state and federal remedies that may be available to people who are denied jobs at Head Start agencies; it certainly does not reveal a congressional intent to create a private right of action under the Head Start Act for people who are fired from Head Start agencies. As plaintiffs surely realize, if courts inferred from Congress’ failure to prohibit a private cause of action the congressional intent to create a private cause of action, courts would read into almost every federal statute an implied right of action. In the majority of instances, this curious interpretive method would undermine congressional intent rather than effectuate it. It also runs counter to the Supreme Court’s demonstrated reluctance to infer private causes of action from federal statutes.. ..
Plaintiffs fare no better under the third Cort factor because implying a private right of action from the Head Start Act would do little or nothing to further the underlying purposes of the legislative scheme....
We now come to the fourth Cort factor. Plaintiffs cast their claim as one “based on employee discharge in violation of federal policies For purposes of determining the existence of subject matter jurisdiction, however, the Court considers the true nature of plaintiffs’ action.. .. Although plaintiffs carefully avoid the phrase in their *503 complaint, the essence of their claim is breach of an employment contract. Actions of this kind are traditionally relegated to state law. Thus the fourth Cort factor, along with the first three, strongly support the conclusion that the Head Start Act does not contain an implied private right of action for people who are terminated from Head Start agencies.[47]
Similarly, in Johnson, supra, the plaintiff alleged that the defendants had mismanaged a Head Start program in violation of federal regulations. The District Court for the Eastern District of Virginia held that Congress did not intend to provide a private cause of action to enforce the federal regulations:
In this case, the applicable statutory scheme is set forth pursuant to the Head Start Act, 42 U.S.C. §§ 9831-9852a. Under the scheme, the Secretary of the Department of Health and Human Services is directed to “establish by regulation standards applicable to Head Start agencies, programs, and projects under this subchapter,” including “minimum levels of overall accomplishment that a Head Start agency shall achieve.” 42 U.S.C. § 9836a(a)(l) & (2). The Secretary is also directed under this section to monitor the performance of every Head Start program and to take appropriate corrective action when a program fails to meet the performance standards established by the regulations. Specifically, the Act requires a full review of each grantee at least once during each three-year period, review of new grantees after the completion of the first year, follow up reviews and return visits to grantees that fail to meet the standards, and “other reviews as appropriate.” 42 U.S.C. § 9836a(c). If the Secretary determines, on the basis of such a review, that a grantee fails to meet the standards described in § 9836a(a), the Secretary shall, inter alia, institute proceedings to terminate the Head Start grant unless the agency corrects the deficiency. 42 U.S.C. § 9836a(d).
*504 All but three of the regulations cited in plaintiffs Second Amended Complaint were promulgated pursuant to the Head Start Act. See 45 C.F.R. § 1304.1. There is no provision in the Head Start Act, however, permitting a private citizen to enforce its provisions. Based on the alternative specific remedies mentioned above, Congress’ intent is clear. The remedy for substandard performance by a Head Start program is an enforcement action by the Secretary of the Department of Health and Human Services, not by private litigants. For these reasons, the Court dismisses with prejudice plaintiffs claims alleging violations of statutory and regulatory provisions relating to the Head Start Act, for failure to state a claim upon which relief can be granted.[48]
We find Hodder and Johnson to be persuasive and similarly conclude, on the basis of the text and structure of the Head Start Act, that no private cause of action exists to enforce § 9839(a).
The act, of course, does not expressly provide for a private cause of action to enforce the disclosure requirement of § 9839(a). Thus, the question becomes whether the text of the act demonstrates an implicit intent to provide for a private cause of action.
Again, the stated purpose of the act is to promote school readiness by providing services to low-income children and their families. 42 USC 9831. The act does not contemplate any benefit to private corporations such as plaintiff; nor does it indicate any intent that such a private corporation may sue to enforce its provisions. Where the intended beneficiaries are specifically identified, we are loath to create a private means of seeking redress under the act for nonbeneficiaries.
More important, the act contains a comprehensive mechanism for ensuring agency compliance with its provisions. We agree with the Johnson court that, far *505 from demonstrating an intent to allow for a private cause of action, the act indicates that the sole remedy for a violation of § 9839(a) is an enforcement proceeding by the secretary of the HHS and the possible termination of Head Start agency status. See 42 USC 9836a.
In light of this clear indication of congressional intent, we are precluded from venturing beyond the bounds of the statutory text to divine support for the creation of a private claim to enforce § 9839(a). To do so would be to substitute our own judgment for that of Congress and thus to usurp legislative authority, something that we of course decline to do.[49]
XV. CONCLUSION
Because the Head Start Act does not provide for a private cause of action to enforce the disclosure requirement of § 9839(a), plaintiff has failed to state a cognizable claim. Accordingly, we reverse the judgment of the Court of Appeals and enter judgment in favor of defendant.
Taylor, C.J., and Corrigan and Markman, JJ., concurred with Young, J.

 42 USC 9831 et seq.

 See section 111(A) of this opinion.

 42 USC 9836(a) provides:
The Secretary [of Health and Human Services] is authorized to designate as a Head Start agency any local public or private nonprofit or for-profit agency, within a community, which (1) has the power and authority to carry out the purposes of this subchapter [42 USC 9831 et seq.~\ and perform the functions set forth in section 642 [42 USC 9837] within a community; and (2) is determined by the Secretary (in consultation with the chief executive officer of the State involved, if such State expends non-Federal funds to carry out Head Start programs) to be capable of planning, conducting, administering, and evaluating, either directly or by other arrangements, a Head Start program.

 MCL 15.231 et seq.

 Although the trial court treated plaintiff’s complaint as if it contained a claim under the federal Freedom of Information Act, 5 USC 551 et seq., the parties agree that plaintiffs claim was based solely on the Michigan FOIA.

 45 CFR 1301.30 provides:
Head Start agencies and delegate agencies shall conduct the Head Start program in an effective and efficient manner, free of political bias or family favoritism. Each agency shall also provide reasonable public access to information and to the agency’s records pertaining to the Head Start program. [Emphasis supplied.]

 5 USC 551 et seq.

 See note 5. Plaintiffs FOIA claims are not at issue in this appeal.

 Office Planning Group, Inc v Baraga-Houghton-Keweenaw Child Dev Bd, 259 Mich App 279; 674 NW2d 686 (2003).

 Gulf Offshore Co v Mobil Oil Corp, 453 US 473, 478; 101 S Ct 2870; 69 L Ed 2d 784 (1981).

 See Johnson v Quin Rivers Agency for Community Action, Inc, 128 F Supp 2d 332, 336 (ED Va, 2001); Hodder v Schoharie Co Child Dev Council, Inc, 1995 US Dist LEXIS 19049 (ND NY, 1995).

12 259 Mich App at 289-290 (emphasis deleted).

 259 Mich App at 290-292.

 259 Mich App at 292-295.

 259 Mich App at 297.

 470 Mich 888 (2004).

 Preserve the Dunes, Inc v Dep’t of Environmental Quality, 471 Mich 508, 513; 684 NW2d 847 (2004); Mack v Detroit, 467 Mich 186, 193; 649 NW2d 47 (2002); Grand Traverse Co v Michigan, 450 Mich 457, 463-464; 538 NW2d 1 (1995).

 Mach, supra at 193.

 42 USC 9831; see also Action for Boston Community Dev, Inc v Shalala, 136 F3d 29, 30 (CA 1, 1998).

 42 USC 9833 to 9835; Community Action of Laramie Co, Inc v Bowen, 866 F2d 347, 348 (CA 10, 1989).

 See 45 CFR 1304.1.

 42 USC 9836a(d)(1)(C).

 We note initially that defendant, in support of its assertion that subject-matter jurisdiction is lacking, presents a hodgepodge, “shotgun approach” argument that conflates the concepts of exhaustion of remedies, primary jurisdiction, “Chevron doctrine” deference, and existence of a private cause of action under the federal statute at issue, making it rather difficult to discern what precisely it is that defendant is arguing. These concepts are not, in fact, jurisdictional in nature. See, e.g., Northwest Airlines, Inc v Kent Co, Michigan, 510 US 355, 365; 114 S Ct 855; 127 L Ed 2d 183 (1994) (“The question whether a federal statute creates a claim for relief is not jurisdictional.”).
In light of our determination that the Head Start Act, in the first instance, does not provide for a private cause of action to enforce the public access requirement of § 9839(a), it is unnecessary to address defendant’s assertion that primary jurisdiction over this cause of action lies with the HHS, see Travelers Ins Co v Detroit Edison Co, 465 Mich 185; 631 NW2d 733 (2001), and its related argument that plaintiff failed to exhaust administrative remedies before filing this state-court action. However, we note that this case presents a straightforward issue of statutory construction involving the meaning of the simple phrase “reasonable public access.” The interpretation of this particular statutory language does not require knowledge of sophisticated or technical terms or the exercise of expert judgment or discretion. Because the “reasonable public access” provision presents a matter that the judiciary is particularly competent to address, rather than a matter within the “specialized and expert knowledge” of the HHS, see id. at 198, primary jurisdiction does not lie with that agency. Moreover, there are no “prescribed administrative remedies” that plaintiff has failed to exhaust *492 before seeking relief under § 9839(a) from the courts. McCarthy v Madigan, 503 US 140, 144-145; 112 S Ct 1081; 117 L Ed 2d 291 (1992).
Defendant’s somewhat cryptic assertion that the state courts are required to give deference to the HHS’s interpretation of § 9839(a) warrants additional comment. Citing the “Chevron doctrine,” see Chevron USA Inc v Natural Resources Defense Council, Inc, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984), defendant argues that the state courts are required to give deference to the determinations of HHS officials regarding the disclosure required under the act and that the state courts therefore lack jurisdiction over this action. Again, defendant is conflating two discrete doctrines. The concept of Chevron deference is not jurisdictional; rather, it is a doctrine that is in the nature of a standard of review, applied by the judiciary in reviewing an agency’s reasonable construction of an ambiguous statute, which recognizes that any necessary policy determinations in interpreting a federal statute are more properly left to the agency responsible for administering the particular statute. See Yellow Transportation, Inc v Michigan, 537 US 36, 47-48; 123 S Ct 371; 154 L Ed 2d 377 (2002); United States v Mead Corp, 533 US 218, 227-228; 121 S Ct 2164; 150 L Ed 2d 292 (2001), quoting Chevron, supra at 844 (“ ‘considerable weight should be accorded to an executive department’s construction of a statutory scheme it is entrusted to administer’ ”).
Again, because we have determined that there is no private cause of action to enforce the disclosure requirement of the Head Start Act, we need not address whether the state courts are required, under Chevron and Mead, supra, to accord deference to the letters authored by these HHS officials. However, we note in passing that these letters presumably lack the “force of law” that is generally required for application of Chevron-type deference. See, e.g., Shalala v Guernsey Mem Hosp, 514 US 87, 99; 115 S Ct 1232; 131 L Ed 2d 106 (1995) (noting that administrative interpretive rules, which do not require notice and comment, “do not have the force and effect of law and are not accorded that weight in the adjudicatory process”); Northwest Airlines, supra at 366-367 (noting that a “reasoned decision” of the Secretary of Transportation would be entitled to Chevron-type deference in a dispute over the meaning of a provision of the Anti-Head Tax Act, 49 USC 1513); Human Development Corp of Metropolitan St Louis v United States Dep’t of Health & Human Services, 312 F3d 373, 379 (CA 8, 2002) (applying Chevron deference to a final decision of the HHS’s Departmental Appeals Board interpreting an HHS regulation); see also Mead, supra at 236 n 17; Christensen v Harris Co, 529 US 576, 586-587; 120 S Ct 1655; 146 L Ed 2d 621 (2000).

 Tafflin v Levitt, 493 US 455, 459; 110 S Ct 792; 107 L Ed 2d 887 (1990), quoting Claflin v Houseman, 93 US 130, 136; 23 L Ed 833 (1876).

 Tafflin, supra at 458. See US Const, art VI, cl 2 (“This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.”).

 Tafflin, supra at 459; Gulf Offshore Co, supra at 478; Charles Dowd Box Co, Inc v Courtney, 368 US 502, 507-508; 82 S Ct 519; 7 L Ed 2d 483 (1962).

 Gulf Offshore Co, supra at 478.

28 Tafflin, supra at 459-460, quoting Gulf Offshore Co, supra at 478 (citations omitted); see also Peden v Detroit, 470 Mich 195, 201 n 4; 680 NW2d 857 (2004). Although we, of course, must apply these federal-law principles in determining whether concurrent jurisdiction exists under the federal statute, we would be remiss if we failed to note that the use of legislative history in the search for legislative intent “ ‘is a perilous venture ... [that is] doubly fraught with danger in Michigan which, unlike Congress, has failed to create an authoritative legislative record.’ ” Frank W Lynch & Co v Flex Technologies, Inc, 463 Mich 578, 587 n 7; 624 NW2d 180 (2001), quoting People v Tolbert, 216 Mich App 353, 360 n 5; 549 NW2d 61 (1996).

 Yellow Freight Sys, Inc v Donnelly, 494 US 820, 823; 110 S Ct 1566; 108 L Ed 2d 834 (1990).

 Const 1963, art 6, § 13.

 Touche Ross & Co v Redington, 442 US 560, 568; 99 S Ct 2479; 61 L Ed 2d 82 (1979), quoting Cannon v Univ of Chicago, 441 US 677, 688; 99 S Ct 1946; 60 L Ed 2d 560 (1979).

 Alexander v Sandoval, 532 US 275, 286; 121 S Ct 1511; 149 L Ed 2d 517 (2001); see also Touche Ross & Co, supra at 578.

 Alexander, supra at 286-287.

 See, e.g., Bivens v Six Unknown Named Agents of Fed Bureau of Narcotics, 403 US 388; 91 S Ct 1999; 29 L Ed 2d 619 (1971) (inferring a private cause of action for damages to enforce the Fourth Amendment guarantee against unreasonable searches and seizures); J I Case Co v Borak, 377 US 426, 433; 84 S Ct 1555; 12 L Ed 2d 423 (1964) (holding that “it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose” of a federal statute). See also, generally, Correctional Services Corp v Malesko, 534 US 61, 75; 122 S Ct 515; 151 L Ed 2d 456 (2001) (Scalia, J„ concurring) (noting that “Bivens is a relic of the heady days in which this Court assumed common-law powers to create causes of action — decreeing them to be ‘implied’ by the mere existence of a statutory or constitutional prohibition”); Note, Section 1983 and implied rights of action: Rights, remedies, and realism, 90 Mich L R 1062, 1071-1083 (1992) (exploring *497 the evolution of the United States Supreme Court’s implied right of action jurisprudence and its subsequent retreat).

 422 US 66; 95 S Ct 2080; 45 L Ed 2d 26 (1975).

 Alexander, supra at 287.

37 Cort, supra at 78 (emphasis deleted).

 441 US 677, 688; 99 S Ct 1946; 60 L Ed 2d 560 (1979).

 See also Merrell Dow Pharmaceuticals Inc v Thompson, 478 US 804, 812; 106 S Ct 3229; 92 L Ed 2d 650 (1986), noting that it would “flout congressional intent to provide a private federal remedy” for an alleged violation of the federal Food, Drug, and Cosmetic Act, 21USC 301 et seq.:
*498 See, e.g., Daily Income Fund, Inc. v. Fox, 464 US 523, 535-536 (1984) (“In evaluating such a claim, our focus must be on the intent of Congress when it enacted the statute in question.”); Middlesex County Sewerage Authority v. National Sea Clammers Assn., 453 U.S., at 13 (“The key to the inquiry is the intent of the Legislature.”); Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 639 (1981) (“Our focus, as it is in any case involving the implication of a right of action, is on the intent of Congress.”); California v. Sierra Club, 451 U.S. at 293 (“[The] ultimate issue is whether Congress intended to create a private right of action.”); Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 91 (1981) (“The ultimate question in cases such as this is whether Congress intended to create the private remedy.”); Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15 (1979) (“The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction.”); Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979) (“The question of the existence of a statutory cause of action is, of course, one of statutory construction.”). [Merrell, supra at 812 n 9.]

 Touche Ross & Co, supra at 575-576.

 15 USC 78q(a).

 451 US 287, 297; 101 S Ct 1775; 68 L Ed 2d 101 (1981).

 33 USC 403.

 Sierra Club, supra at 298.
This Court has also noted the paramount importance of legislative intent in determining whether a private cause of action can he founded on an alleged violation of a statute. See Gardner v Wood, 429 Mich 290, 302 n 6; 414 NW2d 706 (1987) (noting that Cort marked “the beginning of a trend in the federal courts to reserve the creation of civil remedies from penal violations only where to do so [was] clearly consistent with affirmative legislative intent”).

 Alexander, supra at 288.

 Id. at 288 n 7.
Oux dissenting colleagues assert that we have incorrectly characterized Touche Ross & Co and Alexander as representing a departure from the four-factor Cort test. Post at 514-515. Whether the United States Supreme Court will, in the future, continue to apply the four-part Cort test is, however, simply irrelevant where it is clear from the text of the statute at issue that Congress did not intend to create a private enforcement action. Indeed, this case is directly analogous to Touche Ross & Co and Alexander. As the dissent points out, the provisions at issue in Touche Ross & Co and Alexander neither conferred rights on individuals nor proscribed conduct as unlawful. The same can certainly be said of 42 USC 9839(a). Similarly, the dissent notes that the Alexander Court found it quite telling that the statute at issue expressly empowered governmental agencies to enforce regulations. The Head Start Act does precisely that, by directing the secretary to establish regulations governing Head Start agencies and to enforce those regulations, and, in 42 USC 9839(a), by requiring Head Start agencies to conduct program activities in conformity with the Head Start Act and to establish or adopt rules to carry out that duty.
We note, in passing, that Justice Weaver’s separate dissent merely echoes the longer dissent of Justice Kelly. Accordingly, we respond to both in kind.

 Hodder, supra at *11-*16 (citations omitted).

48 Johnson, supra at 336-337.

 Again, contrary to the assertions of our dissenting colleagues, we do not miss any “important distinction” between the statutes at issue in Touche Ross & Co and Alexander and the statute at issue in this case, and this case does not represent the “opposite situation” of the situations present in those cases. Post at 516. Rather, just as the provisions at issue in Touche Ross & Co and Alexander, 42 USC 9839(a) calls for oversight by governmental agencies. Post at 516. Moreover, we wholly disagree with the dissent’s contention that § 9839(a) “specifically confers an individual right on members of the public to conduct inspections of books and records.” Post at 516. Rather, § 9839(a) imposes on Head Start agencies a disclosure requirement, and 42 USC 9836a explicitly provides a remedy for a violation of that requirement: corrective action to be initiated by the secretary.